**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| | ) | **Case No. 25-07228** |
| **V820JACKSON, LLC,** | ) | |
| | ) | **Honorable David DeCelles** |
| Debtor. | ) | |

**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

NOW COMES Debtor, V820Jackson, LLC ("Debtor" or "V820"), by its attorneys, Ariel Weissberg and the law firm of Weissberg and Associates, Ltd., and as *Debtor's Second Amended Chapter 11 Plan of Reorganization*, states as follows:

**I.      INTRODUCTION**

1.      On May 12, 2025, Debtor filed a voluntary petition in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division ("Bankruptcy Court") seeking to reorganize under Chapter 11 of the Bankruptcy Code.  Since then, the Debtor has been managing its assets as a debtor-in-possession.

2.      V820 is an Illinois limited liability company organized on August 24, 2015. The sole member of V820 is AV Wheaton Town Square I, LLC, a Delaware limited liability company. The sole manager of this manager-managed limited liability company is Andrew P. Vaccaro.

3.       V820 is engaged in leasing and otherwise commercializing the real property commonly known as 820 West Jackson, Chicago, Illinois 60607 ("Property") pursuant to a 99-year Ground Lease for the Property dated December 7, 2016 (the "Lease"). The Lessor under the

terms of the Lease is 820 W. Jackson, LLC, an affiliate of Marc Realty.[1] V820 is a lessee of the Property pursuant to approximately 16 Real Property Leases ("Underlying Leases"). A copy of a current rent roll for the Property identifying the tenants of the Underlying Leases is attached hereto as **Exhibit 1**.

4.      On or about May 14, 2019, The Huntington National Bank, on behalf of itself and the other banks (collectively "Huntington"), made certain loans to V820[2] (the "Loan"), pursuant to the terms and conditions of that certain Syndicated Term Loan Agreement dated as of May 14, 2019 (the "Loan Agreement").

5.      The Loan is evidenced by (i) that certain Amended and Restated Promissory Note dated July 9, 2019 made by V820 payable to the order of TCF National Bank, a national banking association ("TCF") in the principal amount of $9,230,769.23 (the "820-TCF Note"); and (ii) that certain Promissory Note dated July 9, 2019 made by V820 payable to the order of Old Second National Bank in the principal amount of $5,169,230.77 (the "820-OS Note") (the 820-OS Note and the 820-TCF Note are collectively referred to herein as the "Notes").

6.      On or about May 14, 2019, Anthony P. Vaccaro and the AP Vaccaro Trust u/t/a 1-14-03, as amended, jointly and severally, executed and delivered to Huntington a certain

---

[1] Pursuant to a Property Management Agreement dated December 5, 2018, between V820 and Crayton Management, LLC, a Florida limited liability company, the Property is managed by Crayton Management, LLC.

[2] This credit facility also included pursuant to separate promissory notes, mortgage, security agreement and Assignment of Rents, V820Jackson, LLC, an Illinois limited liability company, which has a similar 99-year ground lease for the real property commonly known as 820 West Jackson, Chicago, Illinois 60607, with another Marc Realty affiliate, 820 W. Jackson, LLC. V820Jackson, LLC is wholly owned by AV Wheaton Town Square I, LLC. The sole manager of V820Jackson, LLC, a manager-managed limited liability company, is Andrew P. Vaccaro.

Guaranty of Payment, whereby they agreed to pay a portion of the indebtedness of V820 to Huntington.

7. Effective May 14, 2022, by virtue of the existence of a certain default V820 and Huntington, among others, entered into that certain Forbearance Agreement.

8. Pursuant to the loan documents evidencing the Loan, including a Mortgage and Assignment of Rents recorded against the Property, Huntington has a valid, continuing security interest in the rents generated from the Property.

9. As of May 7, 2024, the following amounts are due and owing under the Loan to V820:

| | |
|---|---|
| Principal | $13,773,534.51 |
| Accrued Interest | $ 4,449,102.68 |
| Late Charges | $    12,946.04 |
| Total as of May 5, 2025 | $18,235,582.80 |

Pursuant to the terms of the Notes to V820, interest accrues at the rate of $5,345.27 per diem.

10. V820 was year-to-year, a profitable and successful company and after deploying in excess of $3,900,000 in capital improvement and leasing plans, was well positioned to take advantage of its dynamic position in Chicago's West Loop submarket. However, the Company fell into financial crisis with the onset of the Covid pandemic, starting in 2020 along with a material increase in Property Taxes, materially eroding the property's ability to pay its bills. During the Covid pandemic, V820's revenues dropped from $2,700,000 to a low of $1,800,000 and losses before debt service. Now, however, the prospects are brighter for the Debtor because the Property is well-situated in a heavily commercialized neighborhood, where prospective tenants are

expressing a desire to locate. The Debtor initiated its bankruptcy case to explore and renegotiate the financial obligations of V820, and to file a confirmable Plan of Reorganization providing V820's creditors more than they would receive in a Chapter 7 liquidation.

11. On May 9, 2025, the Debtor filed its *Debtor's Motion to Assume the Unexpired Lease (820 W. Jackson, LLC)* proposing to assume the Lease pursuant to Section 365 of the Bankruptcy Code, which Motion is pending. On May 20, 2025, the Debtor filed Motions to assume the Underlying Leases pursuant to Section 365 of the Bankruptcy Code, which Motions were granted, except relating to one of the Underlying Leases, which is pending.

## II. SUMMARY OF THE PLAN

Through this Plan, the Debtor proposes to pay its creditors on their respective allowed claims from a number of sources. Those sources include the following: (a) V820 has obtained subject to and conditioned on approval of the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code, "debtor in possession" financing sufficient in amount to satisfy all pre- and post-petition arrearages under the terms of the Lease, to pay the Huntington Bank $2,100,000 to assign its claim to DCC Roaring Fork River, LLC pursuant to a written Loan Sale Agreement and to satisfy any outstanding administrative claims and Priority Claims against the Debtor ("DIP Loan"); (b) the revenues of the Debtor; and (c) an "end loan" through Dry Creek Capital Partners to pay-off the DIP Loan and to pay for "tenant improvements" for prospective tenants of the Property, or existing tenants of the Property that will transition to larger space in the Property, either at different locations than currently leased or expanding current spaces with additional square footage ("End Loan").

The sole member of V820, AV Wheaton Town Square I, LLC, shall sell, transfer and assign all of the membership interests that it owns in the Debtor to a new business organization,

unaffiliated with AV Wheaton Town Square I, LLC, Anthony P. Vaccaro and the AP Vaccaro Trust u/t/a 1-14-03 ("New Owner"). The New Owner or its affiliate(s) will be the obligor(s) on the DIP Loan and will guaranty all payments under the terms of the Plan.

The term of the Plan shall not exceed a period of five (5) years (except for payments pursuant to a longer period as specified by the contract between the creditor and Debtor).

Commencing on the Effective Date, which date shall be fourteen (14) days following the entry of a Final Order confirming the Debtor's Plan, or such other date as is set forth herein, the Debtor will commence disbursing payments to its creditors, as follows:

a. **Debtor-in-Possession Operating Expenses and Claims** – Except for certain post-petition real estate tax escrow payments due under the Lease, the Debtor has paid all Debtor-in-Possession operating costs, expenses, and obligations as they became due, pursuant to the credit terms established between the Debtor and each of its creditors. No Debtor-in-Possession operating costs, expenses, obligations or claims will remain unpaid at the Effective Date of the Plan, other than those operating costs, expenses or obligations and claims which are due in the ordinary course of the Debtor's affairs.  These Debtor-in-Possession operating costs, expenses, obligations or claims shall be paid as they become known and due.

b. **Administrative Claims -** Administrative Claims approved by the Bankruptcy Court, including Fee Claims owed to Weissberg and Associates, Ltd., shall be paid, in full, in cash on or before 30 days from the consummation of the End Loan; (2) upon approval by the Bankruptcy Court of such Administrative Claims; or, (3) on such other terms as agreed upon between the Debtor and the claimant asserting the Administrative Claim.

Statutory fees owed to the United States Trustee shall be paid, in full, on the day prior to the Effective Date and shall be paid on a regular basis thereafter as incurred until the Bankruptcy Case is closed or a Final Decree is entered by the Bankruptcy Court.

c. **Priority Claims** – Priority Claims entitled to priority pursuant to §507(a), other than Administrative Claims, shall be paid, in full, on the Effective Date.

d. **Huntington Bank**. Through this Plan of Reorganization, the Debtor will pay Huntington Bank $2,100,000 to assign its claim to Alecko Lending I, LLC or its designee pursuant to a Loan Sale Agreement between Huntington Bank and DCC Roaring Fork River, LLC or its nominee through the DIP Loan.

e. **820 W. Jackson, LLC**. The claim of 820 W. Jackson, LLC will be paid from the DIP Loan to satisfy all pre- and post-petition arrearages under the terms of the Lease.

f. **The Strategic Creditors**. The Strategic Creditors, as enumerated in **Exhibit 2** appended hereto ("Strategic Creditors") will be paid from the revenues of the Debtor and from proceeds of the End Loan and the Debtor's revenues in an amount equal to eighty percent (80%) of each claimant's Allowed Claim on or before one year from the Effective Date.

g. **The Non-Strategic Creditors.** The Non-Strategic Creditors ("Non-Strategic Creditors") will be paid from the revenues of the Debtor in an amount equal to fifteen percent (15%) of each claimant's Allowed Claim on or before 4 years from the Effective Date, in equal amounts in the second, third and fourth years from the Effective Date.

## DEFINITIONS

1.      "Administrative Claim" shall mean any cost or expense of the administration of this Case entitled to priority in accordance with the provisions of 11 U.S.C. §§ 364(c)(1), 503(b), 507(a)(1) and (b), including, without limitation, (a) any actual and necessary expenses of preserving the Debtor's estate and operating the Debtor's business; (b) all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under 11 U.S.C. §§ 330, 331 or 503, including attorneys', paralegals', and accountants' fees and costs; and (c) any fees or charges, including fees due the United States Trustee, assessed against the Debtor's estate under Chapter 123 of Title 28 of the United States Code.

2.      "Allowed Claim" shall mean any Claim (including Secured Claims) against the Debtor (a) for which a proof of claim was timely and properly filed before the Bar Date, or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor on its schedules or amended schedules as liquidated in amount and non-disputed or non-contingent, and, in either such case, a Claim as to which no objection to the allowance thereof has been interposed on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Court or the Plan, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of a claimant; or (b) based on a fee application, to the extent the Bankruptcy Court approves such fee application.  Unless otherwise specified herein or by order of the Bankruptcy Court, Allowed Claims shall not include interest on such Claims of the period from and after the Petition Date, nor shall they include any Claim which may be disallowed under 11 U.S.C. § 502(d).

3.      "Assets" mean all tangible and intangible assets of every kind and nature of the Debtor and all proceeds thereof existing as of the Effective Date.

4.      "Available Cash" means the aggregate of all Cash and Cash Equivalents held by the Debtor.

5.      "Avoidance Actions" shall mean those actions which a debtor or a trustee may institute pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 550 and 553.

6.      "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended and set forth in Section 101 et seq. of Title 11 of the United States Code, including the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and any other amendments that may presently or hereafter apply to these Cases.

7.      "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, and the United States Bankruptcy Judge presiding in the Debtor's Chapter 11 case or the United States District Court for the Northern District of Illinois sitting as a bankruptcy court and any United States District Court Judge presiding therein.

8.      "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as the same may be amended and modified from time to time, and as applicable to cases pending before the Bankruptcy Court.

9.      "Bar Date" shall mean that date that will be set by the Bankruptcy Court by which creditors must file proofs of claim.

10.      "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

11.    "Case" shall mean Case No. 25-07228, currently pending in the United States

Bankruptcy Court for the Northern District of Illinois, Eastern Division.

12.    "Cash" shall mean cash, cash equivalents and other readily marketable securities

or instruments, including, without limitation, readily marketable direct obligations of the United

States of America, certificates of deposit issued by banks, commercial paper of any entity, and

letters of credit.

13.    "Chapter 7" shall mean 11 U.S.C. §701, et al., as amended.

14.    "Chapter 11" shall mean 11 U.S.C. §1101, et al., as amended.

15.    "Claim" means a "claim", as defined in §101(5) of the Bankruptcy Code and shall

mean any right to payment from the Debtor, whether or not such right is reduced to judgment,

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance

if such breach gives rise to a right of payment from the Debtor, whether or not such right to an

equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed,

undisputed, secured or unsecured.  The classification of Claims pursuant to the Plan is set forth in

Article I hereof.

16.    "Claims Reserve" shall mean one or more segregated interest-bearing accounts in

which cash shall be held in accordance with the terms of the Plan.

17.    "Confirmation Date" shall mean the date on which the Confirmation Order is

entered on the docket for the Case.

18.     "Confirmation Order" shall mean the order of the Bankruptcy Court, pursuant to 11 U.S.C. § 1129, as amended, confirming the Plan and approving the transactions contemplated therein.

19.     "Contested Claim" shall mean any Claim or any portion of any Claim as to which the Debtor or any other party in interest has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

20.     "Contested Interest" shall mean any Interest or any portion of any Interest as to which the Debtor or any other party in interest has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

21.     "Debtor" shall mean the Debtor, V820Jackson, LLC.

22.     "Effective Date" shall mean the fourteenth (14th) day following the Confirmation Date unless the implementation of the Confirmation Order is stayed by Bankruptcy Court order, in which case the Effective Date will be the eleventh day following the entry of an order lifting the stay.  In the event the Confirmation Order is stayed pending appeal, it will be the eleventh day after ruling on any appeal assuming the Confirmation Order is upheld.  In the event the Effective Date, determined above, falls on a Saturday, Sunday or legal holiday, the Effective Date shall be the first business day thereafter.

23.     "Final Order" shall mean an order which has become final for purposes of 28 U.S.C. §§ 158 and 1291, including, but not by way of limitation, any order (a) which is no longer subject to appeal or certiorari proceeding, (b) as to which an appeal or certiorari proceeding is

pending but a court order granting a stay has not been entered, or (c) as to which any appeal or certiorari proceeding has been rendered moot pursuant to applicable provisions of federal law.

24.     "Impaired Class" shall mean a Class of Claims which is impaired under 11 U.S.C. § 1124.

25.     "Interest" shall mean any equity interest in the Debtor, including without limitation (a) any membership interests, (b) any rights, options or warrants to purchase such membership interests or securities convertible into or exchangeable for such membership interests, or any rights to have the Debtor repurchase or redeem such shares, or (c) any other direct or indirect legal or beneficial interests in such membership interests.

26.     "Petition Date" shall mean May 5, 2025, in the instant case.

27.     "Plan" shall mean the Debtor's Chapter 11 Plan.

28.     "Priority Claim" shall mean any pre-petition Claim entitled to priority in payment under 11 U.S.C. §§ 507(a), (3), (4) or (6).

29.     "Professional Persons" shall mean persons, including counsel and accountants for the Debtor, retained or to be compensated pursuant to 11 U.S.C. §§ 327, 328, 330, 331, 503(b) or 1103.

30.     "Pro Rata" shall mean in connection with a particular Allowed Claim and in connection with any distribution, the ratio between the amount of such Allowed Claim and the aggregate amount of all Allowed Claims in such class or classes entitled to such distribution.

31.     "Secured Claim" shall mean any Claim that is secured by a lien, mortgage, security or collateral interest, trust deed, encumbrance or other interest that has been properly perfected as

required by law with respect to property of the estate, to the extent of the lesser of the value of the collateral or the amount of the Claim.

32.    "Member" shall mean all persons or entity holding any Interest in the Debtor.

33.    "Tax Claim" shall mean any Allowed Claim that arose pre-petition and is entitled to priority under 11 U.S.C. § 507(a)(8). Tax Claims do not include ad valorem tax claims if those Claims under applicable state law are secured by a lien on real or personal property.

34.    "Ultimately Allowed Claim" shall mean any Contested Claim that has become an Allowed Claim.

35.    "Unimpaired Class" shall mean a class of Claims which is not impaired within the meaning of 11 U.S.C. § 1124.

36.    "United States Trustee" shall mean the United States Trustee for the Northern District of Illinois.

37.    "Unsecured Claim" shall mean all Claims for unsecured debts or liabilities of any character whatsoever arising prior to the Petition Date.

38.    "Unsecured Creditor" shall mean any Person who is the holder of an Unsecured Claim. Unless otherwise stated, all other terms shall have the meaning given to them under the Bankruptcy Code or Bankruptcy Rules.

## THE PLAN

### ARTICLE 1
### CLASSIFICATION OF CLAIMS

1.1    Unclassified Claims. Unclassified Claims shall be all Administrative Claims (unimpaired class).

1.2    <u>Class I Claims</u>.  Class I Claims shall be all Allowed Priority Claims, including those priority claims of the unions (unimpaired class).

1.3    <u>Class II Claims</u>.  Class II Claims shall be all Allowed Secured Claims of Huntington Bank (impaired class)

1.4    <u>Class III Claims</u>.  Class III Claims shall be the allowed Claims of 820 W. Jackson, LLC (impaired class).

1.5    <u>Class IV Claims</u>.   Class IV Claims shall be the allowed Unsecured Claims of the Strategic Creditors (impaired class).

1.6    <u>Class V Claims</u>.  Class V Claims shall be the allowed Unsecured Claim of the Non-Strategic Creditors (impaired class).

1.7    <u>Class VI Interests</u>. Class VI Interests shall be the membership interests that AV Wheaton Town Square I, LLC owns in the Debtor (impaired class).

## ARTICLE 2
## MEANS OF FUNDING THE PLAN

Through this Plan, the Debtor proposes to pay its creditors on their respective allowed claims from a number of sources. Those sources include the following: (a) V820 has obtained subject to and conditioned on approval of the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code, "debtor in possession" financing sufficient in amount to satisfy all pre- and post-petition arrearages under the terms of the Lease, to pay the Huntington Bank $2,100,000 to assign its claim to DCC Roaring Fork River, LLC pursuant to a written Loan Sale Agreement and to satisfy any outstanding administrative claims and Priority Claims against the Debtor ("DIP Loan");  (b) the revenues of the Debtor; and (c) an "end loan" through Dry Creek Capital Partners to pay-off the DIP Loan and to pay for "tenant improvements" for prospective tenants of the Property, or existing tenants of the Property

that will transition to larger space in the Property, either at different locations than currently leased or expanding current spaces with additional square footage ("End Loan").

The sole member of V820, AV Wheaton Town Square I, LLC, shall sell, transfer and assign all of the membership interests that it owns in the Debtor to New Owner. The New Owner or its affiliate(s) will be the obligor(s) on the DIP Loan and will guaranty all payments under the terms of the Plan.

### ARTICLE 3
### TREATMENT OF CLAIMS

3.1 <u>Unclassified Claims</u> (unimpaired). One Hundred percent (100%) of the Administrative Claims approved by the Bankruptcy Court, including Fee Claims owed to Weissberg and Associates, Ltd., shall be paid, in full, in cash on or before 30 days from the consummation of the End Loan; (2) upon approval by the Bankruptcy Court of such Administrative Claims; or, (3) on such other terms as agreed upon between the Debtor and the claimant asserting the Administrative Claim. Statutory fees owed to the United States Trustee shall be paid, in full, on the day prior to the Effective Date and shall be paid on a regular basis thereafter as incurred until the Bankruptcy Case is closed or a Final Decree is entered by the Bankruptcy Court. The Debtor shall not pay any Professional Person until the Bankruptcy Court, after notice and a hearing, enters an order approving such payment.

3.2 <u>Class I Claims (Priority Claims)</u> (unimpaired). The Debtor shall pay all Allowed Class I Claims a Cash distribution equal to 100% of their Allowed Claims, in full, entitled to priority pursuant to §507(a), other than Administrative Claims, on the Effective Date, or as soon as practicable thereafter. The Allowed Claims in this class will be paid from any of the Sources, but primarily from the DIP Loan or the End Loan.

3.3 <u>Class II Claims are represented by the claim of Huntington Bank</u> (impaired). Through this Plan of Reorganization, the Debtor will pay Huntington Bank $2,100,000 to assign its claim to DCC Roaring Fork River, LLC or its nominee pursuant to a written Loan Sale Agreement through the DIP Loan.

3.4 <u>Class III Claims are represented by the claim of 820 W. Jackson, LLC</u>. (impaired) The claim of 820 W. Jackson, LLC will be paid from the DIP Loan to satisfy all pre- and post-petition arrearages under the terms of the Lease.

3.5 <u>Class IV Claims are represented by the claims of The Strategic Creditors</u>. (impaired) The claim of the Strategic Creditors will be paid from the revenues of the Debtor and from proceeds of the End Loan and the Debtor's revenues in an amount equal to eighty percent (80%) of each claimant's Allowed Claim on or before one year from the Effective Date.

3.6 <u>Class V Claims are represented by the claims of The Non-Strategic Creditors</u>. (impaired) The claim of the Non-Strategic Creditors will be paid from the revenues of the Debtor in an amount equal to fifteen percent (15%) of each claimant's Allowed Claim on or before 4 years from the Effective Date, in equal amounts in the second, third and fourth years from the Effective Date.

3.7 <u>Class VI Interests.</u> (impaired) The Class VI Interests are represented by AV Wheaton Town Square I, LLC. Upon the Effective Date or pursuant to the consummation of the DIP Loan, whichever shall be the earlier, AV Wheaton Town Square I, LLC will transfer all right, title and interest in all of the Membership Interests to New Owner.

In the event the Bankruptcy Court finds that the interest rate referenced above that is to be paid to each Claimant with an Allowed Claim from the date of the entry of a Final Order on each

respective Claimant's Allowed Claim, is insufficient as a matter of law to confirm the Plan, the Debtor will raise and pay the increased interest rate that the Court finds to be appropriate and necessary for confirmation of the Plan ("New Interest Rate").

## ARTICLE 4
### PROHIBITIONS RELATED TO EQUITY SECURITIES

4.1     Except for the transfer all right, title and interest in all of the Membership Interests to New Owner, The Debtor will not issue any nonvoting equity securities, pursuant to § 1123(a)(6) of the Bankruptcy Code.

## ARTICLE 5
### THE PAYMENT OF ALL CLAIMS BY THE DEBTOR

The Debtor shall make all of the distributions to creditors as set forth in the Plan.

## ARTICLE 6
### AVOIDANCE ACTIONS AND CAUSES OF ACTION

The Debtor shall have the exclusive right to pursue any and all Avoidance Actions and other causes of action of the Debtor pending on the Effective Date or filed thereafter.  Debtor shall file all such Avoidance Actions and causes of action no later than 120 days after the Effective Date.  Notwithstanding anything to the contrary herein, on the Effective Date, Debtor waives any right to seek contribution, reimbursement or indemnity from any person based on or as a result of Debtor's payment of Allowed Claims hereunder.

## ARTICLE 7
### MODIFICATION OF THE PLAN

Debtor may propose modifications to the Plan in writing at any time before the Confirmation Date.  Subject to the terms and provisions of the Plan, Debtor may modify the Plan at any time after the Confirmation Date and before its substantial consummation, provided that

the Bankruptcy Court approves such plan, as modified. Where the Bankruptcy Court requires a revote, holders of a Claim that have accepted or rejected the Plan shall accordingly be deemed to have accepted or rejected the Plan as modified, unless such holder changes its vote within the time the Bankruptcy Court fixes.

## ARTICLE 8
## METHODS OF DISTRIBUTION UNDER THE PLAN

8.1 Disbursing Agent. The Debtor shall act as the disbursing agent for all disbursements under the Plan.

8.2 Distribution of Unclaimed Property. Creditors shall have 60 days from the check date to negotiate the dividend checks, after which 60 days payment on such checks shall be stopped and the funds, without further Bankruptcy Court order, shall be turned over to the Debtor for distribution to other creditors.

8.3 Distributions Under Ten Dollars. No distributions of less than $10.00 shall be made by the Debtor to any creditor unless a request therefor is made in writing to the Debtor. If, as a result of this provision, an interim distribution is not made to any holder of a Claim, such holder nevertheless shall receive subsequent interim or final distributions from the estate provided that the aggregate amount of such holder's previous unpaid distributions plus the amount of the interim or final distribution then to be made is not less than $10.00.

8.4 Setoffs. To the extent that the Debtor assert a right of setoff against the holder of an Allowed Claim, the Debtor shall withhold and retain from the distribution to such holder an amount equal to the asserted right of setoff. Upon entry of a Final Order adjudicating such right of setoff, the Debtor shall make any distribution required to give effect to such Final Order.

8.5     Saturday, Sunday or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day but shall be deemed to have been completed as of the required date.

**ARTICLE 9**
**EFFECTS OF CONFIRMATION OF THE PLAN**

9.1     Rights of Action.  Any rights or causes of action owned by or accruing in favor of the Debtor (including those arising from the Bankruptcy Code or from these Cases) pending on the Effective Date or filed thereafter shall remain assets of the Debtor's estate to be pursued exclusively by the Debtor.  The Debtor may pursue, abandon, settle or release all rights of action, as appropriate, in accordance with what is in the best interests, and for the benefit, of the Debtor's creditors.

9.2     Pending Adversary Proceedings.   All adversary proceedings pending on the Confirmation Date shall continue to be heard by the Bankruptcy Court after the Confirmation Date.

**ARTICLE 10**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)     To determine any and all applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and, if need be, to liquidate, determine or otherwise adjudicate any and all Claims arising therefrom, including without limitation, Claims for the

curing of defaults under executory contracts or unexpired leases assumed by the Debtor.

(b)    To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date or retained causes of action that may be commenced thereafter.

(c)    To hear and to determine any objections to the allowance of Claims.

(d)    To hear and determine applications for compensation of Professional Persons and reimbursement of expenses under 11 U.S.C. §§ 330, 331 and 503(b), if required under the terms of the Plan.

(e)    To enter and implement such orders as may be appropriate in the event confirmation is for any reason stayed, reversed, revoked, modified or vacated.

(f)    To hear the application of the Debtor, if any, to modify the Plan in accordance with 11 U.S.C. § 1127 and Article 8 herein. After the Confirmation Date, the Debtor may also institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, provided that prior notice of such proceedings is served in accordance with Bankruptcy Rules 2002, 7004 and 9016.

(g)    To hear and determine disputes arising in connection with the Plan or its implementation.

(h)     To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code.

## ARTICLE 11
## GENERAL PROVISIONS

11.1   Notices.   All notices, requests or demands given to the Debtor in connection with the Plan shall be made in writing and shall be deemed to have been given when received or, if mailed, five business days from the date of mailing, First Class, postage prepaid, and shall be given to the Debtor's counsel, Ariel Weissberg and the law firm of Weissberg and Associates, Ltd., 125 South Wacker Drive, Suite 300, Chicago, Illinois, 60606.   All payments, notices and requests to holders of Claims shall be sent to them at their last known address.   The Debtor or any holder of a Claim may designate in writing any other address for purposes of this Section 11.1, which designation shall be effective upon receipt or upon publication of such notice as it is approved by the Bankruptcy Court.

11.2   Headings.   The headings used in the Plan are inserted for convenience only and do not constitute a portion of the Plan or in any manner affect the provisions of the Plan.

11.3   Severability.   Should any provision in the Plan, or its application to any entity, be determined to be unenforceable to any extent, the remainder of the Plan, and the application of such provision to any other entity, shall not be affected thereby, and the Plan shall be enforced to the greatest extent permitted by law, except to the extent the unenforceable provision is a material term of the Plan. .

11.4     Binding Effect.  The rights and obligations of any entity named or referred to in the Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such entity.

11.5     Post-Effective Date Professional Fees.  Subsequent to the payment of Allowed Administrative Claims for professional fees pursuant to sections 330 and 331 of the Bankruptcy Code through the Effective Date, the professionals of the Debtor shall be entitled to reasonable compensation by Order of the Court.

11.6     Revocation or Withdrawal of Plan.  Except as otherwise provided in this Plan, the Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date or Effective Date do not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver, release, admission or concession of any claims or claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings or actions involving the Debtor.

11.7     Filing of Additional Documents.  On or before substantial consummation of the Plan, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.8     Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributions hereon, the Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or

foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

11.9 <u>Reservation of Rights</u>. If the Plan is not confirmed by the Bankruptcy Court or any other court of competent jurisdiction for any reason, the rights of all parties in interest in these Cases are and will be reserved in full. Any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in these Cases shall be bound or deemed prejudiced by any such concession.

11.10 <u>Governing Law</u>. Except to the extent that a rule of law or procedure is governed by federal law, including the Bankruptcy Code and Bankruptcy Rules, Illinois law shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, and the rights and obligations of any parties under the Plan, except to the extent that such agreements, documents and instruments themselves provide for different governing law.

**V820JACKSON, LLC,** Debtor

By:   /s/ Ariel Weissberg
     One of its attorneys

Ariel Weissberg, Esq.
Weissberg and Khanna, Ltd.
125 South Wacker, Suite 300
Chicago, Illinois 60606
T. 312-663-0004 // F. 312-663-1514
Email: ariel@weissberglaw.com
Attorney No. 03125591