**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **Chapter 11** |
| | ) | |
| | ) | **Case No. 25-07228** |
| **V820JACKSON, LLC,** | ) | |
| | ) | **Hon. David H. DeCelles** |
| **Debtor.** | ) | **Room 615** |

**DISCLOSURE STATEMENT TO THE THIRD AMENDED PLAN OF**
**REORGANIZATION FILED BY V820JACKSON, LLC, DEBTOR**

**Dated: August 4, 2026**

Ariel Weissberg, Esq. (No. 03125591)
Weissberg and Khanna, Ltd.
125 South Wacker Drive, Suite 300
Chicago, Illinois 60606
T. 312-663-0004
F. 312-663-1514
Email: ariel@weissberglaw.com

**DISCLOSURE STATEMENT WITH RESPECT TO THIRD AMENDED PLAN OF REORGANIZATION FILED BY V820JACKSON, LLC [1]**

NOW COMES Debtor, V820Jackson, LLC ("Debtor" or "V820"), by its attorneys, Ariel Weissberg and the law offices of Weissberg and Khanna, Ltd., and pursuant to 11 U.S.C. §1125, proposes this Disclosure Statement to the Third Amended Plan of Reorganization. Capitalized terms not defined in this Disclosure Statement shall have the meaning attributed to such terms in the Plan.

## I.      BACKGROUND

1.      On May 12, 2025, Debtor filed a voluntary petition in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division ("Bankruptcy Court") seeking to reorganize under Chapter 11 of the Bankruptcy Code.  Since then, the Debtor has been managing its assets as a debtor-in-possession.

2.      Debtor is an Illinois limited liability company organized on August 24, 2015. Debtor's sole member is AV Wheaton Town Square I, LLC ("AV Wheaton"), a Delaware limited liability company. The sole manager of this manager-managed limited liability company is Andrew P. Vaccaro ("Vaccaro").

3.       Debtor is the tenant under that Ground Lease for 820 Jackson dated October 16, 2015, between 820 West Jackson L.L.C., as Landlord (the "Landlord"), and Debtor, as tenant (the "Ground Lease"). A copy of the Ground Lease is attached hereto as **Exhibit 1**. The real property that is the subject of the Ground Lease is commonly known as 820 West Jackson, Chicago, Illinois 60607 ("Property"). Debtor is the lessor of the Property pursuant to certain leases identified on **Exhibit 2** attached hereto. ("Tenant Leases").

---

[1] All capitalized terms shall have the same meanings and definitions as provided in the Plan of Reorganization filed contemporaneously herewith.

4.      Debtor is indebted to Huntington pursuant to the terms and conditions of that certain Syndicated Term Loan Agreement dated as of May 14, 2019 (the "Huntington Loan Agreement"). Huntington's loan to Debtor (the "Loan") is evidenced by (i) that certain Amended and Restated Promissory Note dated July 9, 2019 made by Debtor payable to the order of TCF National Bank, a national banking association ("TCF"), in the principal amount of $15,769,230.77 (the "820-TCF Note"); (ii) that certain Promissory Note dated July 9, 2019 made by Debtor payable to the order of Old Second National Bank, a national banking association ("Old Second"), in the principal amount of $8,830,769.23 (the "820-OS Note"); (iii) that certain Amended and Restated Promissory Note dated July 9, 2019 made by Co-Borrower payable to the order of TCF in the principal amount of $9,230,769.23 (the "850-TCF Note"); and (iv) that certain Promissory Note dated July 9, 2019 made by Co-Borrower payable to the order of Old Second in the principal amount of $5,169,230.77 (the "850-OS Note"; the 820-TCF Note, the 820-OS Note, the 850-TCF Note and the 850-OS Note are collectively referred to herein as the "Notes").

5.      The Notes are secured by, among other things, that certain Leasehold Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents executed by Debtor and dated as of May 14, 2029, and recorded with the Recorder of Deeds of Cook County, Illinois, on May 16, 2019, as Document No. 1913633020 encumbering the Ground Lease (the "Leasehold Mortgage").

6.      On or about May 14, 2019, Anthony P. Vaccaro and the AP Vaccaro Trust u/t/a 1-14-03, as amended, jointly and severally, executed and delivered to Huntington a certain Guaranty of Payment, whereby they guaranteed payment of a portion of the Loan.

3

7.     On November 12, 2025, Huntington filed its Proof of Claim 4-1 in the amount of $27,441,404.41. (the "Huntington Proof of Claim"). According to the Huntington Proof of Claim:

> As of the Petition Date, the amount due and owing to Creditor by the Debtor under the Loan Documents was $27,441,404.41, consisting of principal in the amount of $20,580,614.19, accrued interest in the amount of $6,731,132.72, late charges in the amount of $9,293.59, financial accounting and review costs in the amount of $32,400.00, and fees and costs in the amount of $87,963.91.

Huntington Proof of Claim, 4-1, Part 2.

8.     Debtor was year-to-year, a profitable and successful company and after deploying in excess of $3,900,000 in capital improvement and leasing plans, was well positioned to take advantage of its dynamic position in Chicago's West Loop submarket.  However, the Debtor fell into financial crisis with the onset of the Covid pandemic, starting in 2020 along with a material increase in Property Taxes, materially eroding the property's ability to pay its bills. During the Covid pandemic, V820's revenues dropped from $2,700,000 to a low of $1,800,000 and losses before debt service.  Now, however, the prospects are brighter for the Debtor because the Property is well-situated in a heavily commercialized neighborhood, where prospective tenants are expressing a desire to locate. Debtor initiated its bankruptcy case to explore and renegotiate its financial obligations, and to file a confirmable plan of reorganization providing its creditors more than they would receive in a Chapter 7 liquidation.

9.     On May 9, 2025, Debtor filed its *Debtor's Motion to Assume the Unexpired Lease (820 W. Jackson, LLC)* proposing to assume the Gound Lease pursuant to Section 365 of the Bankruptcy Code, which Motion is pending.

4

10.   On May 20, 2025, Debtor filed Motions to assume the Underlying Leases pursuant to Section 365 of the Bankruptcy Code, which Motions were granted, except relating to one of the Underlying Leases, which is pending.

**SUMMARY OF THE PLAN**

Through the Plan, Debtor proposes to pay its creditors on their respective allowed claims from a number of sources. Those sources include the following: (a) New Equity (b) the revenues of the Reorganized Debtor; and (c) the Exit Loan. Debtor will (i) pay $2,100,000 to the Holder of the Huntington Allowed Claim in full satisfaction of such claim, (ii) pay the Landlord Cure Claim; (iii) satisfy any outstanding Administrative Claims and Priority Claims; (iv) pay unsecured claims and (v) pay for "tenant improvements" for prospective tenants of the Property, or existing tenants of the Property that will transition to larger space in the Property, either at different locations than currently leased or expanding current spaces with additional square footage.

Commencing on the Effective Date or such other date as is set forth herein, the Debtor will commence disbursing payments to its creditors, as follows:

a.   **Debtor-in-Possession Operating Expenses and Claims** – Except for certain post-petition real estate tax escrow payments due under the Ground Lease, the Debtor has paid all Debtor-in-Possession operating costs, expenses, and obligations as they became due, pursuant to the credit terms established between the Debtor and each of its creditors. No Debtor-in-Possession operating costs, expenses, obligations or claims will remain unpaid at the Effective Date of the Plan, other than those operating costs, expenses or obligations and claims which are due in the ordinary course of the Debtor's affairs. These Debtor-in-Possession operating costs, expenses, obligations or claims shall be paid as they become known and due.

5

b. **Administrative Claims -** Administrative Claims approved by the Bankruptcy Court, shall be paid, in full, in cash on (1) on or the later of (i) the Effective Date; (ii) 10 days after the approval by the Bankruptcy Court of such Administrative Claims (including, with respect to Fee Claims of Weissberg and Associates, Ltd., entry of a final order approving its final fee application);; or, (2) on such other terms as agreed upon between the Debtor and the claimant asserting the Administrative Claim. Statutory fees owed to the United States Trustee shall be paid, in full, on the day prior to the Effective Date and shall be paid on a regular basis thereafter as incurred until the Bankruptcy Case is closed or a Final Decree is entered by the Bankruptcy Court.

c. **Priority Tax Claims** – Priority Tax Claims shall be paid as set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

d. **Huntington Bank**. Through the Plan of Reorganization, the Debtor will pay $2,100,000 to the holder of the Huntington Allowed Claim.

e. **Landlord**. Through the Plan of Reorganization, the Reorganized Debtor will assume the Ground Lease and shall pay the Landlord Cure Claim in full on the Effective Date.

f. **General Unsecured Claims**. Holders of General Unsecured Claims will be paid from the New Equity, the Exit Loan and the Reorganized Debtor's revenues in an amount equal to [eighty percent (80%)] of each Holder's Allowed General Unsecured Claim on or before one year from the Effective Date.[2]

The Exit Loan shall be secured by a Lien of the Ground Lease evidenced by a leasehold mortgage in a form satisfactory to the Exit Lender. All Interests will be canceled and extinguished

---

[2] NTD: This assumes only one Class of Unsecured Creditors as suggested in the note.

as of the Effective Date and of no further force and effect against the Reorganized Debtor. The New Member will be sole member of the Reorganized Debtor.

The Exit Loan is the exit loan as described in the Term Sheet, a copy of which is attached hereto as **Exhibit 3**, and the loan documents evidencing and/or securing the Exit Loan will be included in the Plan Supplement. The Exit Lender shall be Dry Creek Capital Partners or one or more entities managed by Dry Creek Capital Partners.

**THE PLAN**

**ARTICLE 1**
**CLASSIFICATION OF CLAIMS**

1.1    Class I Claims.  Class I Claims shall be all Allowed Priority Claims, including those priority claims of the unions (unimpaired class).

1.2    Class II Claims. Class II Claims shall be the Huntington Claim (impaired class)

1.3    Class III Claims. Class III Claims shall be the Landlord Cure Claim (unimpaired class)

1.4    Class IV Claims. Class IV Claims shall be the Allowed General Unsecured Claims (impaired class).

1.5    Class V Interests. Class V Interests shall be the membership interests that AV Wheaton Town Square I, LLC owns in the Debtor (impaired class).

**ARTICLE 2**
**MEANS OF FUNDING THE PLAN**

Through the Plan, the Debtor proposes to pay its creditors on their respective allowed claims from a number of sources. Those sources include the following: (a) New Equity; (b) the revenues of the Reorganized Debtor; and (c) the Exit Loan.

## ARTICLE 3
## TREATMENT OF CLAIMS

3.1     <u>Unclassified Claims</u> (unimpaired). In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

(a)     The Debtor shall pay Administrative Claims: (1) on the later of (i) the Effective Date; or (ii) 10 days after the approval by the Bankruptcy Court, Administrative Claims (including, with respect to the Fee Clams of Weissberg and Associates, Ltd., entry of a final order approving its final fee application); or, (2) on such other terms as agreed upon between the Debtor and the claimant asserting the Administrative Claim.  Statutory fees owed to the United States Trustee shall be paid, in full, on or prior to the Effective Date and shall be paid on a regular basis thereafter as incurred until the Bankruptcy Case is closed or a Final Decree is entered by the Bankruptcy Court. The Debtor shall not pay any Professional Person until the Bankruptcy Court, after notice and a hearing, enters an order approving such payment.

(b)     The Allowed Priority Tax Claims shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Reorganized Debtor and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business

3.2     <u>Class I Claims -- Priority Claims</u>. (unimpaired). The Debtor shall pay all Allowed Class I Claims a Cash distribution equal to 100% of their Allowed Claims, in full, entitled to priority pursuant to §507(a), other than Administrative Claims, on the Effective Date, or as soon as practicable thereafter. The Allowed Claims in this class will be paid from any of the Sources but primarily Exit Loan.

3.3    Class II Claim -- Huntington Bank Claim. (impaired) On the Effective Date, the Reorganized Debtor will pay the Holder of the Huntington Claim $2,100,000 in exchange for full and final satisfaction, settlement, release, and discharge of the Huntington Claim.

3.4    Class III Claim -- Landlord Cure Claim. (unimpaired) On the Effective Date, the Reorganized Debtor will pay the Landlord the Landlord Cure Claim in full and final satisfaction, settlement, release, and discharge of the Landlord Cure Claim.

3.5    Class IV Claims -- General Unsecured Creditors. (impaired) Holders of General Unsecured Claims will be paid an amount equal to [eighty percent (80%)] of each Holder's Allowed General Unsecured Claim on or before one year from the Effective Date.

3.6    Class V -- Interests. (impaired) All Interests will be canceled and extinguished as of the Effective Date and of no further force and effect against the Reorganized Debtor. Interest Holders will have no rights against the Debtor, the Reorganized Debtor, their assets, or the Estate, arising from or relating to such Interests or the cancellation thereof. Any voting, control or management rights held by Interest Holders shall be terminated, as will any prepetition right to receive equity distributions from the Debtor or Reorganized Debtor.

3.07    Appended hereto as **Exhibit 4**, is the Chart Summarizing Treatment of Claims.

**IV.    ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

4.1    Assumption and Rejection.

(a)    Each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) was assumed or rejected previously by the Debtor; (3) expired or terminated pursuant to its own terms before the Effective Date; (4) is the subject of a motion to

9

assume pending on the Confirmation Date; or (5) is the subject of a motion pending on the Confirmation Date to assume an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date. Each non- Debtor counterparty to an Executory Contract or Unexpired Lease deemed rejected must file a Proof of Claim asserting any Rejection Damages Claim on or before the Rejection Bar Date.

(b)      Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, as of the Effective Date, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

(c)      All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor and be enforceable by the Reorganized Debtor in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall

10

revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

4.2.   Procedure

(a)   Debtor will file the Schedule of Assumed Executory Contracts and Unexpired Leases with the Plan Supplement on or before the date that is fifteen (15) days before the Confirmation Hearing which shall notify all other non-Debtor counterparties not scheduled that all other Executory Contracts and Unexpired Leases shall be rejected pursuant to the Confirmation Order. Each non-Debtor counterparty to an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan shall have until the date that is seven (7) calendar days before the Confirmation Hearing to file a written objection to the rejection of its Executory Contract or Unexpired Lease.

(b)   Executory Contracts and Unexpired Leases set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date. Notwithstanding anything to the contrary in the Plan, Debtor reserves the right to alter, amend, modify or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time before the Confirmation Date, including without limitation the right to remove any Executory Contract or Unexpired Lease therefrom.

(c)   Any counterparty to an Executory Contract or Unexpired Lease that objects to (1) the assumption of such Executory Contract or Unexpired Lease, (2) the proposed Cure amount, (3) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (4) any other matter pertaining to assumption, shall file a written objection thereto on or before the date that is seven (7) days prior to the Confirmation Hearing.

(d)      Any timely filed responses or objections will be heard by the Bankruptcy Court at the Confirmation Hearing or on such other date agreed-to by the parties or ordered by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to any of the foregoing matters related to assumption will be deemed to have assented and will be deemed to have forever released and waived any such objection. Payment of any Cure amount shall be made following the entry of a Final Order or orders resolving any dispute related thereto and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

(e)      Each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

(f)      Contracts and leases entered into after the Petition Date by the Debtor, and any Executory Contracts and Unexpired Leases assumed by the Debtor may be performed by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

## V.      FILING OF CLAIMS AND OBJECTIONS

5.1      Claims Bar Date.

(a)      All persons and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, including, without limitation, Governmental Units, that assert a Claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor which arose before the Confirmation Date, including Administrative Claims, shall file a Proof of thirty-five (35) days from the Confirmation Date (the "Claims Bar Date"). In accordance with Bankruptcy

Rule 3003(c)(2) and the Plan, any Holder of a Claim that is not excepted from the requirements of the Claim Filing Procedures and Bar Date and fails to timely submit a Proof of Claim in the appropriate form shall be forever barred, estopped, and enjoined from (a) asserting such Claim against the Debtor in the Chapter 11 Case, and (b) participating in any distribution under the Plan.

(b)     The following persons or entities need not submit a Proof of Claim in these chapter 11 cases on or prior to the Claims Bar Date: (i) Huntington; (ii) b. any person or entity that has already submitted a Proof of Claim against the Debtor with the Clerk of the Bankruptcy; (iii) any person or entity whose Claim is listed on the Schedules filed by the Debtors, provided that (i) the Claim is not scheduled as "disputed," "contingent," or "unliquidated,"; (iv) any Holder of a Claim previously allowed by order of the Bankruptcy Court; (v) any Holder of a Claim that has already been paid in full; and (vi) any holder of a Claim arising on or after the Confirmation Date.

(c)     Debtor shall provide notice of the Bar Date within at least five (5) days after the Confirmation Date, on: (i) the United States Trustee; (ii) any person that has requested notice of the proceedings in the Chapter 11 Case pursuant to Bankruptcy Rule 2002; (iii) any person that has submitted a Proof of Claim against the Debtor; (iv) all creditors listed in the Debtor's Schedules for which the Debtor has an addresses; (v) all parties to litigation with the Debtor and their counsel (if known); (vi) the United States Attorney's Office for the Northern District of Illinois; (vii) the Internal Revenue Service; and the office of the Illinois Attorney General.

5.2     <u>Objections to Claims</u>. The Reorganized Debtor and/or any other party in interest may object to the allowance of any Claim. Objections must be filed no later than the Claims Objection Deadline. The Reorganized Debtor will make no distribution on account of any claim that is not Allowed unless or until the claim becomes an Allowed Claim.

## VI.   RETENTION OF LITIGATION CLAIMS

Except as otherwise provided in the Plan, all Litigation Claims (including Avoidance Actions) are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Litigation Claims. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Litigation Claims, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtor shall have sole discretion to determine in its business judgment which Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, right, or Litigation Claim, the Reorganized Debtor shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Litigation Claims shall survive confirmation and the commencement or prosecution of Litigation Claims shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

## VII.   EFFECTS OF CONFIRMATION OF THE PLAN

7.1   <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind every holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under the Plan and whether such Holder has accepted the Plan.

7.2   <u>Release and Discharge of Reorganized Debtor</u>. Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each Holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived,

released, and discharged the Reorganized Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Interest in the Reorganized Debtor.

7.3     Vesting of Assets. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including all Litigation Claims but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Litigation Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

7.4     Discharge. Except as provided in the Plan or the Confirmation Order, the rights granted under the Plan and the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, discharge, and release of all Claims and Interests. Except as provided in the Plan or the Confirmation Order, confirmation of the Plan discharges the Reorganized Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code section 501; (b) a Claim based on such debt is Allowed under Bankruptcy Code section 502; or (c) the holder of a Claim based on such debt has accepted the Plan. Without limiting the foregoing, the discharge granted under the Plan is granted to the fullest extent allowed under Bankruptcy Code sections 1141(a), 1141(b), 1141(c), and 1141(d)(1).

7.5     Injunction. Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, the Reorganized Debtor, or the Estate, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to the Reorganized Debtor (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Reorganized Debtor, the Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Reorganized Debtor or the Estate (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtor, the Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, the Reorganized Debtor or the Estate (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against the Reorganized Debtor or the Estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of the Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in

connection with the consummation of the Plan. By accepting distributions pursuant to the Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in this Article.

## VIII.   SUMMARY OF VOTING, THE PURPOSE OF CHAPTER 11 AND OTHER PROVISIONS OF THE PLAN

**THE ABOVE IS A SUMMARY OF THE PLAN THAT PROVIDES FOR THE REORGANIZATION OF THE DEBTOR.  CREDITORS ARE URGED TO STUDY THE PLAN IN FULL AND TO CONSULT WITH COUNSEL TO UNDERSTAND THE PLAN BECAUSE IT IS A COMPLEX AND LEGALLY BINDING DOCUMENT.**

The Debtor submits this disclosure statement (the "Disclosure Statement") to holders of claims against and interests in the Debtor in connection with a solicitation of acceptances of the Plan of the Debtor, as the same may be amended.  The statements contained in this Disclosure Statement include summaries of provisions contained in the Plan and in documents referred to therein. The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference should be made to the Plan and to such documents for the full and complete statements of such terms and provisions.  The Plan itself and the documents referred to therein controls the actual treatment of claims against and interests in the Debtor under the Plan and will, upon the Effective Date, be binding upon all holders of claims against and interests in the Debtor and its estate, and other parties-in-interest.  In the event of any conflict between this Disclosure Statement, on the one hand, and the Plan or any attached exhibits (the "Exhibits"), on the other hand, the terms of the Plan and the Exhibits are controlling.

Under the Plan, the Debtor seeks to liquidate its non-exempt assets (*i.e.* the Property) and use its future earnings if necessary to pay debts in accordance with the Plan. The Debtor shall distribute all payments required by the Plan to creditors of the Debtor according to the priorities set forth in the Bankruptcy Code and as set forth in the Plan.  The Debtor believes that confirmation

17

of the Plan is in the best interests of the Debtor and its creditors.   The Plan and its proposed treatment of creditors is feasible.   Under the terms of the Plan, all creditors will receive as much or more than they would receive in a Chapter 7 liquidation.   Accordingly, the Debtor urges each creditor that is impaired under, and entitled to vote with respect to, the Plan, to vote to accept the Plan.

To be counted, a ballot containing your acceptance or rejection of the Plan must be filed with the Bankruptcy Court no later than the balloting deadlines provided in the ballot.   **The balloting deadline is to be determined and will be reflected in the Ballot.**   To be considered, all ballots must be received by the Clerk of the Bankruptcy Court, 219 South Dearborn, 7th Floor, Chicago, Illinois 60604 (authorized ECF filers shall file electronically at the Court's website, www.ilnb.uscourts.gov), on or before on the date to be set forth in the Ballot.   Ballots received after the balloting deadline will not be counted or otherwise considered.

**THIS DISCLOSURE STATEMENT IS PROVIDED TO ALL OF THE KNOWN HOLDERS OF CLAIMS AGAINST THE DEBTOR WHO ARE ENTITLED TO VOTE THEIR ACCEPTANCE OR REJECTION OF THE PLAN. ACCORDINGLY, THIS DISCLOSURE STATEMENT IS DISSEMINATED IN FURTHERANCE OF THE DEBTOR'S SOLICITATION OF ACCEPTANCES OF THE PLAN. THE PURPOSE OF THIS DISCLOSURE STATEMENT IS TO PROVIDE SUCH INFORMATION AS WOULD ENABLE A HYPOTHETICAL, REASONABLE CREDITOR, TYPICAL OF THE HOLDERS OF CLAIMS THAT ARE IMPAIRED UNDER THE PLAN, TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.  THIS DISCLOSURE STATEMENT IS DESIGNED AND INTENDED TO ASSIST THOSE HOLDERS OF CLAIMS ENTITLED TO VOTE IN DECIDING WHETHER TO ACCEPT THE PLAN.  AFTER NOTICE AND A HEARING, THE BANKRUPTCY COURT WILL HAVE THE OPPORTUNITY TO APPROVE THIS DISCLOSURE STATEMENT SHOULD IT FIND THAT IT CONTAINS INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE A HYPOTHETICAL, REASONABLE CREDITOR, TYPICAL OF THE CLASSES BEING SOLICITED TO VOTE ON THE PLAN, AND TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PREPARED AND SUBMITTED BY THE DEBTOR UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS CONCERNING THE DEBTOR, OTHER THAN THOSE SET FORTH IN THE DISCLOSURE STATEMENT, HAVE BEEN AUTHORIZED BY THE DEBTOR. THE DEBTOR BELIEVES THAT ALL**

**OF THE INFORMATION CONTAINED HEREIN IS ACCURATE AND IS BASED UPON INFORMATION THAT THE DEBTOR HAS PROVIDED TO ITS COUNSEL.  THE INFORMATION AND STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT AT ANY TIME AFTER THE DATE HEREOF SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN ANY CHANGE IN THE INFORMATION STATED HEREIN.**

**NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION REGARDING THIS DISCLOSURE STATEMENT OR THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS AND SCHEDULES ATTACHED HERETO.**

**NO REPRESENTATIONS ARE BEING MADE AS TO TAX CONSEQUENCES, IF ANY, RESULTING FROM CREDITOR TREATMENT UNDER THE PLAN AND CREDITORS ARE URGED TO STUDY THE PLAN IN FULL AND TO CONSULT WITH AN ACCOUNTANT REGARDING TAX CONSEQUENCES, IF ANY, ARISING UNDER THE PLAN.**

Chapter 11 is designed to promote equality of treatment for similarly situated creditors and similarly situated interest holders with respect to the distribution of a debtor's assets in a reorganization. The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code contemplates that the Debtor will continue to conduct its personal financial and business operations in the ordinary course and remain in possession of its property during the case, except as otherwise provided, while it seeks to implement a reorganization plan.  The bankruptcy court must approve any activities that are not within the ordinary course of the Debtor's personal financial and business operations.

The consummation of a plan of reorganization or liquidation is the principal objective of a Chapter 11 case.  A plan sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon the debtor, any issuer of securities under the plan, any person or entity acquiring property under the plan and any creditor

19

of or equity security holder in the debtor, whether or not such creditor or equity security holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan.

The primary objective of the Plan is to settle, compromise or otherwise dispose of certain claims and interests on terms that the Debtor believes to be fair and responsible and in the best interests of its estate and creditors.  The Debtor believes that the Plan it has proposed provides the best and most prompt possible recovery to the Debtor's claim holders.  Under the Plan, claims against and interests in the Debtor are divided into different classes set forth in the Summary of Plan section above.  The Plan contemplates the reorganization of the Debtor, the restructuring of its debts and the distribution of plan payments to holders of the various Allowed Claims.

The following is an explanation of other material provisions of the Plan:

1.      **Disbursing Agent** – The Debtor shall act as the disbursing agent for all disbursements under the Plan.

2.      **Distributions for Claims or Interest Allowed as of the Effective Date** – Except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, distributions to be made on account of claims that are allowed as of the Effective Date of the Plan will be made as soon thereafter as is practicable. Any payment or distribution required under the Plan on a day other than a business day will be made on the next succeeding business day.

3.      **Interest on Claims** – Unless otherwise specifically provided for in the Plan or confirmation order, or required by applicable non-bankruptcy law, post-petition interest shall not accrue or be paid on any claims.

4.      **Distributions** – The Reorganized Debtor shall be the Disbursing Agent to make all distributions required under the Plan to Holders of Allowed Claims.

A.      **Delivery of Distributions in General** – Distributions under the Plan to holders of Allowed Claims shall be delivered by first class mail to the claimants' addresses

20

set forth in the Debtor's records unless such addresses are superseded by proofs of claim or transfers of claim filed pursuant to Bankruptcy Rule 3001.

B. **Undeliverable and Unclaimed Distributions –** If the distribution to any holder of an Allowed Claim is returned to the disbursing agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such holder unless and until the disbursing agent is notified in writing of such holder's then-current address.  Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed distribution within three (3) months after any Distribution Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtor, its estate, or its property. In such cases, any cash distribution on account of such claims for undeliverable or unclaimed distributions shall be redeposited in the Debtor's account.  Nothing contained in the Plan shall require any disbursing agent to attempt to locate any holder of an Allowed Claim or Interest.

5. **Method of Cash Payment –** Payments of cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Disbursing Agent, by (a) checks drawn on a domestic bank selected by the Debtor, or (b) wire transfer therefrom.

6. **Withholding and Reporting Requirements –** In connection with the Plan and all distributions thereunder, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan each holder of an Allowed Claim or Interest that is to receive a distribution of cash pursuant to the

Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

7.    **Setoffs** – Except for Claims for U.S. Trustee quarterly fees, Unclassified Claims and Claims I claims, to the extent that the Reorganized Debtor assert a right of setoff against the Holder of an Allowed Claim, the Reorganized Debtor shall withhold and retain from the distribution to such holder an amount equal to the asserted right of setoff. Upon entry of a Final Order adjudicating such right of setoff, the Reorganized Debtor shall make any distribution required to give effect to such Final Order.

8.    **Resolution of Disputed, Contingent and Unliquidated Claims** – The Debtor will be required to file any objections it may have to the allowance of a claim or interest.  The Effective Date of the Plan shall be fourteen (14) days following the entry of an Order confirming the Plan, or such other date as is set forth therein.  No distributions will be made on account of any disputed claim unless and until the dispute is resolved either through agreement of the parties or by a final order of the Bankruptcy Court (or other court of appropriate jurisdiction). The Plan does not provide for interest to accrue or to be paid with respect to Disputed Claims that are ultimately allowed in whole or in part. No payment or distribution will be made with respect to all or any portion of a Disputed Claim or Interest unless and until all objections to such claim are withdrawn or such claim has been allowed pursuant to a final order.

9.    **Amendment or Modification of the Plan** – Subject to §1127 of the Bankruptcy Code and, to the extent applicable, §§1122, 1123 and 1125 of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify the Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan. A holder of a claim or interest that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified,

if the proposed alteration, amendment or modification does not materially or adversely change the treatment of the claim or interest of such holder.

**AGAIN, THE READER OF THIS DISCLOSURE STATEMENT IS DIRECTED TO THE APPLICABLE SECTIONS OF THE PLAN FOR A MORE COMPLETE DISCUSSION OF THE VARIOUS OTHER PROVISIONS OF THE PLAN.**

### IX.     CONFIRMATION PROCESS

**A.     Confirmation of Plan:** The Debtor's implementation of its Plan depends on whether creditors vote to accept the Plan and, thereafter, whether the Court confirms or approves the Plan. The Bankruptcy Code provides that only creditors whose claims are impaired within the meaning of §1124 of the Bankruptcy Code are entitled to vote on the Plan.  Essentially, the Plan impairs a creditor's claim if it alters that creditor's legal or equitable rights. Creditors whose claims are not impaired (*i.e.* who will receive everything to which they are legally entitled) are deemed to have accepted the Plan and need not vote their acceptance. Likewise, creditors who receive no distribution on account of their claims under the Plan are deemed to have rejected the Plan.

In calculating the votes that are cast under a particular Plan, under the Bankruptcy Code, a class of claims is considered to have accepted the Plan if both a majority in number and two thirds (2/3) of the dollar amount of those actually voting, vote to accept the Plan. The claims of those who do not vote are not counted in determining whether the requisite statutory majority in number and dollar amount have voted for acceptance. Acceptance by the statutory majority will bind the minority who dissent.

**B.     Cram Down of Plan:** In the event the requisite acceptances are not obtained from classes of creditors and interest holders, the Debtor will request confirmation pursuant to the cram down provisions, or §1129(b), of the Bankruptcy Code; and, the Court may confirm the Plan if the court finds that the Plan accords fair and equitable treatment to the class rejecting it.  In other words, if one or more classes votes their rejection or is deemed to have rejected the Plan, the Court

may nevertheless confirm the Plan if it finds that at least one class of impaired non-insider creditors has approved the Plan; the rejecting class of creditors would not have received more under Chapter 7 of the Code than under the Plan; and, the Plan is fair and equitable. For the Plan to be fair and equitable, it must not unfairly discriminate against one class of creditors, and creditors of junior rank may not receive any distribution if creditors of a superior rank are either not paid in full or do not consent to the distribution. If the Plan meets these standards, the Court may cram down the Plan on the class of dissenting creditors and confirm the Plan over their objections.

C.      **Effect of Confirmed Plan:** The provisions of a confirmed plan bind a debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.  Except as otherwise provided in the Plan,  the Confirmation Order shall provide, among other things, that from and after the Confirmation Date all persons who have held, hold or may hold claims against or interests in the Debtor are (i) permanently enjoined from taking any of the following actions against the estate, or any of its property on account of any such claims or interests and (ii) preliminarily enjoined from taking any of the following actions against the Debtor or its property on account of such claims or interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the

Plan; provided, however, that nothing contained herein shall preclude such persons from exercising its rights pursuant to and consistent with the terms of the Plan.

D.    **Voting Procedures:** If you are entitled to vote to accept or reject the Plan, a Ballot will be provided to you.  Please carefully follow the instructions set forth in the Ballot and vote and file your Ballot with the Bankruptcy Court on or prior to on the Voting Deadline so that it is received by the Court by that date and time at:

The Clerk of Court
United States Bankruptcy Court
219 S. Dearborn Street, Seventh Floor
Chicago, Illinois 60604

with a copy mailed to Debtor's Counsel:

Ariel Weissberg, Esq.
Weissberg and Khanna, Ltd.
125 South Wacker Drive, Suite 300
Chicago, Illinois 60606

Authorized ECF filers shall file electronically at the Court's website, www.ilnb.uscourts.gov

**TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED BY THE BANKRUPTCY COURT NO LATER THAN THE VOTING DEADLINE SPECIFIED IN THE BALLOT (THE "VOTING DEADLINE").**

**ANY BALLOT THAT IS EXECUTED BUT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN AND ANY BALLOT THAT IS NOT EXECUTED OR IN WHICH BOTH THE ACCEPTANCE AND REJECTION BOX IS CHECKED WILL BE CONSIDERED NULL AND WILL NOT BE COUNTED.**

If you are a Holder of a Claim entitled to vote on the Plan and do not receive a ballot, receive a damaged ballot, lose your ballot, or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please call Debtor's counsel, Ariel Weissberg at (312) 663-0004.

**X.     LIQUIDATION ANALYSIS, PROJECTIONS AND FEASIBILITY OF PLAN**

Under the provisions of the Bankruptcy Code, the Plan must be in the best interest of creditors by providing a return of not less than the amount they would receive in a Chapter 7 liquidation. The distribution scheme proposed by the Debtor in the Plan reflects that all claimants will be receiving distributions equal to or in excess of any amounts that they would receive under Chapter 7 of the Bankruptcy Code.

Appended hereto as **Exhibit 5** is the valuation performed by Bruce Flanagan and Property Valuation Advisors, Inc. This valuation reflects no value of the Debtor's business.

In the event of a Chapter 7 liquidation, all of the creditors of the bankruptcy estate will be paid less than the amount of their claims.   As reflected in the Plan and the Debtor's Schedules, the Debtor's only valuable asset is the Lease, which cannot be assigned to any third-party purchaser without the cure of all defaults under the terms of the Lease pursuant to Section 365 of the Bankruptcy Code. As such, any assignment of the Lease to a third party-purchaser would require that assignee to pay in excess of $3,273,127.33 to 820 W. Jackson, LLC as a condition precedent to the purchase.

The Debtor believes that the confirmation and implementation of the Plan is feasible, and preferable to liquidation. The confirmation of the Plan will result in the greatest possible recoveries to holders of claims and interests. The Plan is feasible because the Debtor asserts that it will be able to consummate timely the DIP Loan.

In support hereof, the Debtor is appending financial projections for five (5) years and its Profit and Loss Statement for year-end 2024, year-end 2025 and 2026 through May 5, 2026, as **Group 6**.

The Debtor does not believe that after confirmation of the Plan, it will need to further reorganize or otherwise need to restructure the claims of its creditors.

26

For all of these reasons, the terms of the Plan are feasible.

## XI.    TAX CONSEQUENCES

The following discussion summarizes potential federal income tax consequences of the implementation of the Plan to the Debtor and all claimants.  The Debtor does not believe that there will be any tax consequences to the Debtor from the refinance of the existing secured debt and the claims of 820 W. Jackson, LLC. All claimants are contemplated to receive payment in full on their Claims, and such claimants may have to pay income taxes.

**THE FEDERAL INCOME TAX CONSEQUENCES, IF ANY, OF THE PLAN ARE COMPLEX AND SUBJECT TO SIGNIFICANT UNCERTAINTIES.  THE DEBTOR HAS NOT REQUESTED AND WILL NOT REQUEST A RULING FROM THE INTERNAL REVENUE SERVICE OR AN OPINION OF COUNSEL WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN.  NO REPRESENTATIONS ARE BEING MADE AS TO TAX CONSEQUENCES, IF ANY, RESULTING FROM CREDITOR TREATMENT UNDER THE PLAN.  ACCORDINGLY, ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN INDEPENDENT TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## XII.    RISK FACTORS TO BE CONSIDERED

Because the Debtor is reorganizing the ordinary risk factors inherent in a reorganization are present, and as such are dependent upon a number of factors.

Additionally, the following specific risks exist in connection with confirmation of the Plan:

1.    Any objection to the Plan filed by a member of a Class could either prevent or delay confirmation of the Plan.

2.    In the event that certain Classes fail to meet the minimum Class vote requirements, as described above, the Debtor may request a cramdown of such non-accepting Classes.  Failure to secure a cramdown or to suitably amend the Plan, if required, will in all likelihood prevent, or at least delay confirmation of the Plan and therefore, payment of the disbursements due to creditors.

3.      The Exit Lender does not close on the Exit Loan contemplated by the Term Sheet.

## XIII.   CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to the alternatives described above because it will result in the greatest recoveries to holders of claims and interests.  Accordingly, the Debtor strongly urges that each holder of a claim submit an acceptance of the Plan.

**V820JACKSON, LLC,** Debtor


By:_____/s/ Ariel Weissberg_____
        One of its attorneys



Ariel Weissberg, Esq.
Weissberg and Khanna, Ltd.
125 South Wacker, Suite 300
Chicago, Illinois 60606
T. 312-663-0004
F. 312-663-1514
Email: ariel@weissberglaw.com
Attorney No. 03125591

28