# EXHIBIT 1

FILED DATE: 3/10/2025 10:51 AM 20241117604

10/13/15

### GROUND LEASE FOR 820 JACKSON

## GROUND LEASE

## 820 WEST JACKSON BOULEVARD, CHICAGO, ILLINOIS

**820 WEST JACKSON L.L.C.,**
an Illinois limited liability company,
**LANDLORD,**

and

**V820JACKSON, LLC,**
an Illinois limited liability company,
**TENANT**

October 16, 2015

5993165_11

## TABLE OF CONTENTS

1. DEFINITIONS.................................................................................................1
2. LEASE OF PREMISES....................................................................................4
3. TERM..............................................................................................................4
4. CONDITION OF PREMISES..........................................................................4
5. RENT...............................................................................................................5
6. ABSOLUTELY NET LEASE...........................................................................6
7. PAYMENT OF IMPOSITIONS.......................................................................7
8. DEPOSITS FOR TAXES.................................................................................8
9. CONTESTS......................................................................................................9
10. LEASEHOLD MORTGAGES.........................................................................10
11. VALUATION PROCEEDINGS.......................................................................13
12. SURRENDER OF PROPERTY........................................................................14
13 REPAIRS AND MAINTENANCE....................................................................15
14. COMPLIANCE WITH LAWS AND ORDINANCES......................................16
15. INSURANCE....................................................................................................18
16. INSURANCE POLICIES..................................................................................20
17. DAMAGE OR DESTRUCTION BY FIRE OR OTHER CASUALTY............21
18. CHANGES AND ALTERATIONS BY TENANT.............................................25
19. COVENANT AGAINST LIENS.......................................................................27
20. USE AND OPERATION OF PROPERTY........................................................28
21. ASSIGNMENT AND SUBLETTING..............................................................29
22. ENTRY ON PROPERTY BY LANDLORD.....................................................30
23. INDEMNIFICATION OF LANDLORD...........................................................31
24. CONDEMNATION...........................................................................................32
25. RECORDS.........................................................................................................34
26. ESTOPPEL CERTIFICATES...........................................................................35
27. EVENTS OF DEFAULT...................................................................................35
28. RIGHTS OF LANDLORD UPON EVENT OF DEFAULT.............................37
29. INVALIDITY OF PARTICULAR PROVISIONS............................................40
30. NOTICES..........................................................................................................40
31. CONDITION OF AND TITLE TO PROPERTY...............................................41
32. QUIET ENJOYMENT; TITLE POLICY..........................................................41
33. LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS...............41
34. MISCELLANEOUS..........................................................................................42
35. INTERRUPTION OF SERVICE.......................................................................43
36. MEMORANDUM OF LEASE..........................................................................43
37. FORCE MAJEURE...........................................................................................44

### Exhibits

A. Legal Description
B. Memorandum of Lease

FILED DATE: 3/10/2025 10:51 AM   20241117604

## GROUND LEASE

**THIS GROUND LEASE** ("Lease") is made as of the ____ day of October, 2015, by and between **820 WEST JACKSON L.L.C.**, an Illinois limited liability company ("**Landlord**"), and **V820JACKSON, LLC**, an Illinois limited liability company ("**Tenant**").

## WITNESSETH:

A. Landlord is the owner of the real estate, but not the buildings, improvements and other property located thereon, which is legally described on **Exhibit A** attached hereto (the "**Premises**"). The buildings and improvements located on the Premises are commonly known as 820 West Jackson Boulevard, Chicago, Illinois and as of the date hereof are owned by Tenant, subject to Landlord's reversionary interest therein as provided for in this Lease.

B. Landlord desires to lease the Premises to Tenant and Tenant desires to lease the Premises from Landlord, for the term, at the rental and subject to the terms, provisions and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the foregoing recitals, and the covenants and agreements herein contained, and for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **DEFINITIONS**.

In addition to other terms defined herein, the following terms shall have the meanings set forth in this Section 1 unless the context otherwise requires:

"**Additional Rent**" shall mean all Impositions and all other amounts payable hereunder by Tenant in addition to Base Rent.

"**Contested Liens**" shall mean any Taxes imposed or assessed upon the Property or which may be or become a lien thereon, and any mechanics', materialmen's or other liens or claims for lien upon the Property, which Tenant elects to contest by appropriate legal proceedings diligently prosecuted, pursuant to Section 9 of this Lease.

"**Curable Defaults**" shall mean those defaults or other events described in subsections 27(a), (b) and (f) of this Lease.

"**Environmental Laws**" is defined in subsection 14(f) of this Lease.

"**Events of Default**" is defined in Section 27 of this Lease.

FILED DATE: 3/10/2025 10:51 AM    20241117604

"**Governmental Authorities**" shall mean all federal, county, municipal and local governments, and all departments, commissions, boards, bureaus and offices thereof, having or claiming jurisdiction over the Premises and/or the Improvements.

"**Hazardous Materials**" shall mean those materials deemed to be hazardous pursuant to any Environmental Law.

"**Impositions**" shall mean all Taxes, all charges for water, gas, light, heat, telephone, electricity, power, cable television and other utilities and communication services rendered or used in connection with the Property and all assessments (including, but not limited to, assessments for public improvement or benefit), levies, licenses, permits and all other fees, water and sewer rents and charges and all other governmental charges, general and special, ordinary and extraordinary, levied or assessed against or which may become a lien against the Property or upon this Lease or the leasehold estate created hereby, or which arise in respect of the operation, occupancy and use of the Property, or which are at any time prior to or during the Term of this Lease payable or levied upon or assessed against the Property.

"**Improvements**" shall mean all buildings and other improvements now or at any time hereafter constructed or erected upon or located at the Premises, together with and including, but not limited to, all fixtures, equipment, machinery, appliances and other articles and attachments now or hereafter forming a part of, attached to or incorporated in any such buildings or improvements, but specifically excluding fixtures, equipment, machinery, appliances and other articles owned by any subtenants of the Property and located at the Property. The Improvements presently consist of an eight (8) story office building located on the Premises commonly known as 820 West Jackson Boulevard, Chicago, Illinois.

"**Institutional Lender**" shall mean a bank, savings and loan association, insurance company, pension fund, mortgage banker, corporate lender, or other similar lender.

"**Lease Interest Rate**" shall mean the rate of twelve percent (12%) per annum.

"**Lease Year**" shall mean a period of twelve (12) consecutive calendar months. The first Lease Year shall begin on the Commencement Date if such date is the first day of a calendar month. If the Commencement Date is other than the first day of a calendar month, then the first Lease Year shall begin on the first day of the first calendar month next following the Commencement Date. Each succeeding Lease Year shall commence upon the anniversary date of the first Lease Year. The phrase "Term", as used in this Lease, shall include all full Lease Years and any partial month at the commencement of the Term.

"**Leasehold Indebtedness**" shall mean a loan (as further described in Section 10 below) from an Institutional Lender.

"**Leasehold Mortgage**" is defined in Section 10 below.

"**Leasehold Mortgagee**" is defined in Section 10 below.

"**Memorandum**" shall mean that Memorandum of Lease described in Section 36 of this Lease, and attached hereto as Exhibit B.

"**Non-Curable Defaults**" shall mean those defaults or other events described in subsections 27(c), (d) and (e).

"**Notices**" shall mean all notices, requests, demands, consents, approvals, and other communications which may or are required to be served or given under this Lease.

"**Person**" shall mean and include an individual, corporation, partnership, limited liability company, land trust, unincorporated association and any governmental entity.

"**Plans and Specifications**" shall mean the architectural drawings approved by Landlord (which approval shall not be unreasonably withheld, conditioned or delayed) and paid for at the sole cost and expense of Tenant.

"**Premises**" shall mean the parcel of land (but not the Improvements) located in Chicago, Illinois and legally described on Exhibit A attached hereto and made a part hereof.

"**Property**" shall mean the Premises and the Improvements.

"**Rent**" shall mean Base Rent and Additional Rent collectively.

"**Rent Adjustment**" is defined in subsection 5(a) below.

"**Taxes**" shall mean all taxes, assessments, impositions and charges, foreseen and unforeseen, general or special, ordinary or extraordinary, including, without limitation, any personal property taxes, sales taxes, use taxes, excise taxes, commercial rent taxes, real estate taxes and assessments, sewer and water charges and other governmental charges or impositions of every kind and nature affecting the Property or any portion thereof or interest therein, whether heretofore or now accrued, due or payable during the Term, which may have been heretofore or which may hereafter from time to time be levied, assessed or imposed by any Governmental Authority upon the Property or any part thereof or interest therein or upon the interest of Landlord therein or in or under this Lease.

"**Tenant's Alterations**" is defined in Section 18 of this Lease.

"**Unavoidable Delays**" shall mean any delay caused by reason of strikes, lockouts, labor disputes, inability to obtain labor or materials or reasonable substitutes therefor, acts of God, governmental restrictions, regulations or controls, enemy or hostile governmental action, civil commotion, insurrection, revolution, sabotage, fire or other casualty, acts of Governmental Agencies, provided satisfactory evidence of the occurrence of same shall be furnished by Tenant to Landlord.

3

## 2.    LEASE OF PREMISES.

(a)    Landlord, for and in consideration of the Rent hereinafter reserved by Landlord and the covenants and agreements hereinafter contained on the part of Tenant, leases and demises to Tenant, and Tenant takes and leases, upon and subject to the terms and conditions set forth herein, the Premises, together with all right and interest, if any, of Landlord in and to the land lying in the streets and roads in front of and adjoining the Premises, and in and to any easement appurtenant to the Premises, but no limitation or termination of any such right or interest shall affect this Lease or any of Tenant's obligations hereunder except to the extent otherwise provided herein.

(b)    Tenant agrees to take and lease the Premises subject to all covenants, restrictions, easements, agreements and conditions of record, and any easements for public, quasi-public or private utilities.

(c)    Any Improvements currently existing or hereafter constructed upon the Premises pursuant to the terms and conditions of this Lease shall remain the sole property of Tenant during the Term, provided that nothing in this subsection (c) shall affect the rights of Landlord to such Improvements as provided in Section 12 hereof.

(d)    Landlord hereby grants Tenant the right to use the easements granted to Landlord under that certain Parking Easement Agreement dated of even date herewith by and between 211 Peoria Property LLC, as Grantor and Landlord, as Grantee (the "211 Easement"). Landlord agrees that during the term of the 211 Easement (i) it will not do or permit anything to be done which would result in a material default under the 211 Easement; (ii) it will not amend, modify or terminate the 211 Easement which, in any way, would adversely affect Tenant without Tenant's prior written approval and the prior written approval of any Leasehold Mortgagee; and (iii) it shall use good faith efforts to enforce all terms of the 211 Easement, or delegate to Tenant from time to time the right to enforce the 211 Easement. Tenant agrees that it will comply with the terms, provisions, covenants and conditions of the 211 Easement and in the event that Tenant shall require enforcement of the 211 Easement and such enforcement shall require Landlord to take affirmative enforcement actions, Landlord shall either (i) delegate such enforcement rights to Tenant, or (ii) undertake such enforcement actions, at Tenant's expense.

## 3.    TERM.

The term of this Lease (hereinafter referred to as the "Term") shall commence on the date hereof (hereinafter referred to as the "Commencement Date") and shall end on the last day of the ninety-ninth (99th) consecutive Lease Year, unless sooner terminated pursuant to the provisions hereof.

## 4.    CONDITION OF PREMISES.

Tenant agrees to accept the Premises in an absolutely "as is" condition, and Tenant acknowledges that Landlord, its agents, attorneys, representatives and employees have not made and do not make any representations or warranties, express or implied, to Tenant regarding the

4

FILED DATE: 3/10/2025 10:51 AM   20241117604

Premises and the Improvements, including, but not limited to: (a) the zoning of the Premises; (b) the condition of any underground, above ground or surface improvements; (c) the size, area, use or type of the Premises or the fitness of the Premises for any intended or particular use; (d) the nature of the soil on and underlying the Premises or its suitability for development or any other use thereof; (e) any financial information pertaining to the use, ownership or operation of the Premises; (f) the status of any requirements or obligations imposed, implied or to be undertaken by the owner of the Premises pursuant to any zoning, subdivision or development laws or agreements with any governmental entities; or (g) the presence or absence of any toxic wastes, hazardous materials or structural defects in, on or under the Premises or the Improvements thereon, any and all such representations and warranties, express or implied, being hereby expressly waived by Tenant and disclaimed by Landlord. Tenant waives any claim that may exist for patent and/or latent defects. No promise of Landlord to alter, remodel, decorate, clean or improve the Premises, Improvements or any portion of the Premises or the Improvements and no representation respecting the condition of the Premises or the Improvements or any portion of the Premises or the Improvements have been made by Landlord to Tenant.

5.   **RENT.**

Tenant covenants and agrees to pay to Landlord or for the benefit of Landlord the following:

(a)   Base Rent. Commencing on the Commencement Date and on the fifth (5th) day of each calendar month during the first Lease Year, Tenant shall pay to Landlord in advance, base rent ("Base Rent") in the amount of Forty-Two Thousand Five Hundred and 00/100 ($42,500.00) per month. On the fifth (5th) day of the second (2nd) Lease Year, and on the fifth day of each Lease Year thereafter, each monthly installment of Base Rent shall be increased by an amount (the "**Rent Adjustment**") equal to one and one-half percent (1.5%) of the monthly Base Rent payable during the immediately preceding Lease Year, i.e. the monthly Base Rent during the second (2nd) Lease Year would be Forty-Three Thousand One Hundred Thirty Seven and 50/100 Dollars ($43,137.50). All Rent Adjustments shall be compounded. In the event the Commencement Date occurs other than on the first (1st) day of a calendar month, Base Rent for such month shall be prorated on the basis on the number of days in such month, from and including the Commencement Date to and including the last day of said calendar month, which payment shall be made to Landlord on or before the fifth (5th) day of the immediately succeeding month.

(b)   Payment of Rent. All Rent shall be paid by Tenant to Landlord at Landlord's address specified herein, or to such other person and/or at such other address as Landlord may direct by notice to Tenant, in dollars of the United States of America. Rent shall be paid without notice or demand, and without abatement, deduction, counterclaim or setoff. Any installment of Rent that is not paid within five (5) days after the date same shall be due shall bear interest at the Lease Interest Rate, payable upon demand. Notwithstanding the above, the interest provided for herein shall not be applicable with respect to the first late payment made by Tenant in any twelve (12) month period.

(c)    Late Charge. Tenant acknowledges that its late payment of any Rent will cause Landlord to incur certain costs and expenses not contemplated under this Lease, the exact amount of which is extremely difficult or impracticable to fix.  Such costs and expenses will include, without limitation, loss of use of money, administrative and collection costs and processing and accounting expenses.  Therefore, if any installment of monthly Base Rent is not received by Landlord when due or any other sum due hereunder is not paid when due, Tenant shall immediately pay to Landlord a late charge equal to five percent (5%) of the unpaid amount. Such late charge is in addition to any interest due pursuant to subsection (b) above. Landlord and Tenant agree that this late charge represents a reasonable estimate of costs and expenses incurred by Landlord from, and is fair compensation to Landlord for, its loss suffered by such non-payment by Tenant.  Acceptance of the late charge shall not constitute a waiver of Tenant's default with respect to such non-payment by Tenant or prevent Landlord from exercising any other rights and remedies available to Landlord under this Lease.  Failure to pay the late charge shall constitute an Event of Default under this Lease.  Notwithstanding the above, the late charge provided for herein shall not be applicable with respect to the first late payment made by Tenant in any twelve (12) month period.

6.    **ABSOLUTELY NET LEASE.**

(a)    Net Lease. This Lease shall be deemed and construed to be a fully "net lease" and Tenant shall pay to Landlord, absolutely net throughout the Term, all Rent, free of any charges, assessments, impositions or deductions of any kind and without abatement, deduction or setoff whatsoever in the manner set out above for payment of Base Rent, and under no circumstances or conditions, whether now existing or hereafter arising, or whether beyond the present contemplation of the parties, shall Landlord be expected or required to make any payment of any kind whatsoever relating to the Premises or the Improvements or be under any other obligation or liability hereunder or otherwise.  Except for debt service on any indebtedness of Landlord, Tenant shall pay all costs, expenses and charges of every kind and nature relating to the Premises and the Improvements which may arise or become due or payable prior to, during or after (but attributable to a period falling within) the Term, including all costs, expenses and charges related to all recorded or unrecorded agreements, easements, declarations, restrictions or other matters affecting the title to the Premises or the Improvements, and Tenant hereby agrees to indemnify Landlord against and hold Landlord harmless from the same.  Except as otherwise specifically provided for in this Lease, Tenant's obligation to pay Rent hereunder shall not terminate prior to the termination date of this Lease, notwithstanding the exercise by Landlord of any or all of its rights under Section 28 below or otherwise, and all obligations of Tenant hereunder shall be absolute and shall not be affected for any reason whatsoever, including, without limitation, by any damage to or destruction of the Premises or the Improvements or any part thereof, any taking of the Premises or the Improvements or any part thereof or interest therein by condemnation or otherwise, any prohibition, limitation, restriction or prevention of Tenant's use, occupancy or enjoyment of the Premises or the Improvements or any part thereof, or any interference with such use, occupancy or enjoyment by any person or for any reason, any matter affecting title to the Premises or the Improvements, any default by Landlord hereunder, the impossibility, impracticability or illegality of performance by Landlord, Tenant or both, any action of any governmental authority, any breach of warranty or misrepresentation, or any other cause whether similar to or dissimilar from the foregoing and whether or not Tenant shall have

6

notice or knowledge thereof and whether or not such cause shall now be foreseeable. The parties intend that the obligations of Tenant under this Lease shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations have been modified or terminated pursuant to an express provision of this Lease.

(b)     No Termination. Except as otherwise provided for in this Lease, this Lease shall not terminate nor shall Tenant have any right to terminate this Lease or be entitled to any abatement of Rent or reduction thereof, nor shall the obligations of Tenant be otherwise affected for any reason whatsoever, it being intended that the obligations of Tenant hereunder shall be separate and independent covenants and agreements and that the Rent reserved hereunder shall continue to be payable in all events and that the obligations and liabilities hereunder shall continue unaffected unless the requirements to pay or perform the same shall be modified or terminated pursuant to an express condition of this Lease.

(c)     Waiver of Right to Terminate. Tenant waives all rights now or hereafter conferred by law (i) to quit, terminate or surrender this Lease or the Premises, or any part thereof, or (ii) which provide for an abatement, delay, deferment, set off, counterclaim or reduction of Rent or any other sums payable by Tenant hereunder, or (iii) to claim or take advantage of any stay, exemption or extension law or any so-called "Moratorium Law" now or hereafter in effect.

7.     **PAYMENT OF IMPOSITIONS**.

(a)     Tenant's Obligation to Pay. Tenant shall pay or cause to be paid, before any fine, penalty, interest or cost may be added thereto for the nonpayment thereof, all Impositions; provided, however, that if, by law, any Imposition may be paid in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), Tenant may, provided no Event of Default shall have occurred and be continuing, exercise the option to pay the same (and any accrued interest on the unpaid balance of such Imposition) in installments and, in such event, Tenant shall pay such installments as may become due during the Term of this Lease as the same respectively become due and before any fine, penalty, further interest or cost may be added thereto.

(b)     Landlord's Taxes. Nothing herein contained shall require Tenant to pay income taxes assessed against Landlord, or any capital levy, corporation, franchise, excess profits, estate, succession, inheritance taxes of Landlord; provided, however, that if at any time during the Term, the present method of taxation shall be changed so that in lieu of the whole or any part of any taxes, assessments, levies or charges levied, assessed or imposed on real estate and the improvements thereof there shall be levied, assessed or imposed on Landlord a capital levy or other tax directly on the rents received therefrom and/or a state or local franchise tax, income, excise or similar tax assessment, levy or charge measured by or based, in whole or in part, upon such rents or the present or any future building or buildings on the Premises, then all such taxes, assessments, levies or charges, or the part thereof so measured or based, shall be deemed to be included within the term "Taxes" for the purposes hereof, but only to the extent that such taxes would be payable if the Property were the only property of Landlord, and Tenant shall pay and discharge the same as herein provided in respect of the payment of Impositions.

7

## 8.   DEPOSITS FOR TAXES.

In order to assure the payment of Taxes payable with respect to the Property as and when the same shall become due and payable:

(a)   Taxes. Tenant shall deposit with Landlord on the first day of each and every month an amount equal to one-twelfth (1/12) of the Taxes next to become due; provided that, in the case of the first such deposit, there shall be deposited, in addition, any amount as estimated by Landlord which, when added to monthly deposits to be made thereafter as provided for herein, shall assure to Landlord's satisfaction that there will be sufficient funds on deposit to pay Taxes as they come due; provided that the amount of such deposits (herein generally called "Tax Deposits") shall be based upon Landlord's reasonable estimate as to the amount of Taxes next to be payable. Landlord will not be obligated to segregate Tax, and will have no obligation to pay interest thereon.

(b)   Single Monthly Payment. The aggregate of the monthly Tax Deposits together with Base Rent, shall be paid in a single payment each month, to be applied first to payment of Taxes, then to payment of Base Rent.

(c)   Payment by Landlord. Landlord will, out of the Tax Deposits, upon the presentation to Landlord by Tenant of the bills therefor, pay the insurance premiums and Taxes or will, upon presentation of receipted bills therefor, reimburse Tenant for such payments made by Tenant. If the total Tax Deposits on hand shall not be sufficient to pay all of the Taxes when the same shall become due, then Tenant shall pay to Landlord on demand any amount necessary to make up the deficiency. If the total of such Tax Deposits exceeds the amount required to pay the Taxes, such excess shall be credited to subsequent payments to be made for such items.

(d)   Application of Funds by Landlord to Cure Default. In the event of a default in any of the provisions contained in this Lease, Landlord may, at its option, without being required so to do, apply any Tax Deposits on hand to any of the obligations of Tenant hereunder, in such order and manner as Landlord may elect. When all of the obligations hereunder have been fully paid, then any remaining Tax Deposits shall be paid to Tenant. All Tax Deposits are hereby pledged as additional security for the obligations of Tenant hereunder, and shall be held in trust to be irrevocably applied for the purposes as herein provided, and shall not be subject to the direction or control of Tenant.

(e)   Landlord Not Liable. Notwithstanding anything to the contrary herein contained, Landlord shall not be liable for any failure to apply to the payment of Taxes any amounts deposited as Tax Deposits unless the Tenant, while no default exists hereunder and within a reasonable time prior to the due date, shall have requested Landlord in writing to make application of such Tax Deposits on hand to the payment of the particular Taxes for the payment of which such Tax Deposits were made, accompanied by the bills therefor.

(f)   Deposits with Mortgagee. Notwithstanding the foregoing, at any time when Tenant shall be required to make tax deposits with any Leasehold Mortgagee with respect to any Leasehold Mortgage made in accordance with the terms of this Lease, the requirements of this

8

Section 8 shall be deemed satisfied by the payment of the full amount of the tax deposits required by such Leasehold Mortgagee, provided that (i) such Leasehold Mortgagee shall hold that portion of the deposits allocated for the payment of Taxes in trust to be irrevocably applied for the purposes of paying Taxes as they come due notwithstanding the occurrence of any default or event of default under the Leasehold Mortgage and (ii) Tenant shall deliver to Landlord a canceled check evidencing payment of each obligation for Tax Deposits not later than thirty (30) days after payment thereof. In the event that Tenant shall no longer make tax deposits with a Leasehold Mortgagee, Tenant shall immediately commence and thereafter continue to make such payments as herein provided; provided, however, that the first such deposit shall be in the initial amounts required under subsection (a) of this Section 8.

## 9.    CONTESTS.

Tenant shall have the right to contest by appropriate legal proceedings diligently prosecuted, any Taxes imposed or assessed upon the Property or which may be or become a lien thereon which has not been paid by Tenant and any mechanics', materialmen's or other liens or claims for lien upon the Property which has not been paid by Tenant (collectively, "**Contested Liens**"), and no Contested Lien shall constitute an Event of Default hereunder, if, but only if:

(a)    Notices. Tenant shall forthwith give notice of any Contested Lien to Landlord at the time the same shall be asserted;

(b)    Deposit; Bonding. Tenant shall deposit with Landlord one hundred twenty-five percent (125%) of the full amount of such Contested Lien or such amount as may be secured thereby (the "**Lien Amount**"), together with such additional amount as Landlord may reasonably estimate as interest or penalties which might arise during the period of contest; provided that, in lieu of such payment, Tenant may furnish to Landlord a bond or title indemnity in such amount and form, and issued by a bond or title insurance company, as may be satisfactory to Landlord in its sole discretion; and further provided that no such deposits or security shall be required if a Leasehold Mortgagee requires Tenant to provide deposits, bonds or other security or assurances in connection with such Contested Lien;

(c)    Tenant to Diligently Prosecute. Tenant shall diligently prosecute the contest of any Contested Lien by appropriate legal proceedings having the effect of staying the foreclosure or forfeiture of the Property; and

(d)    Tenant to Pay on Demand. Tenant shall pay such Contested Lien and all Lien Amounts together with interest and penalties thereon (i) if and to the extent that any such Contested Lien shall be determined adversely to Tenant, or (ii) forthwith upon demand by Landlord if, in the reasonable opinion of Landlord, the Property shall be in imminent jeopardy or in danger of being forfeited or foreclosed; provided that if Tenant shall fail to do so, Landlord may, but shall not be required to, pay all such Contested Liens and Lien Amounts and interest and penalties thereon and such other sums as may be necessary in the judgment of the Landlord to obtain the release and discharge of such liens; and any amount expended by Landlord in so doing shall be so much Additional Rent bearing interest at the Lease Interest Rate until paid, and payable upon demand; and provided further that Landlord may in such case use and apply for the

9

purpose funds deposited as provided in subsection (b) above, if any, and may demand payment upon any bond or title indemnity furnished as aforesaid.

(e)    Security for Contested Liens. Notwithstanding the foregoing, (a) at any time when Tenant shall be required to provide security to any Leasehold Mortgagee with respect to any Contested Liens, the requirements of subsection (b) above shall be deemed satisfied by depositing such security to such Leasehold Mortgagee; provided that (i) such Leasehold Mortgagee shall hold such security in trust to be irrevocably applied for the purposes of paying the Contested Liens notwithstanding the occurrence of any default or event of default under the Leasehold Mortgage and (ii) Tenant shall deliver to Landlord evidence reflecting the delivery of such security to the Leasehold Mortgagee and (b) in the event any Leasehold Mortgagee does not require any deposit with respect to any Contested Liens or at the time of any such Contested Liens there is no Leasehold Mortgage, the requirements of subsection (b) above shall be deemed satisfied by depositing such security to a nationally recognized title insurance company doing business in the State of Illinois.

10.    **LEASEHOLD MORTGAGES.**

(a)    Tenant's Right to Mortgage. Tenant may mortgage, hypothecate or pledge the leasehold estate created hereby and the interest of Tenant in and to this Lease, together with Tenant's right, title and interest in the Improvements, to an Institutional Lender (herein called a "**Leasehold Mortgagee**"), by a mortgage or other security instrument (herein generally called a "**Leasehold Mortgage**") securing Leasehold Indebtedness (as defined in Section 1 hereof), and in connection therewith if Tenant or any Leasehold Mortgagee shall have notified Landlord as provided for herein, of the existence of such Leasehold Mortgage and of the address to which any notice to Leasehold Mortgagee is to be given, then no notice made by Landlord to Tenant pursuant to this Lease or as provided for herein shall be deemed effective unless Landlord has mailed a copy thereof to the Leasehold Mortgagee at its designated address and, without limiting the generality of the foregoing, Landlord shall not be empowered to terminate this Lease by reason of the occurrence of any Event of Default unless and until the Landlord shall have given the Leasehold Mortgagee a copy of its notice of default and an opportunity to cure the same as provided in subsection (b) of this Section 10.

(b)    Compliance By Leasehold Mortgagee. Subject to compliance with the provisions of subsection (a) hereof, Landlord and Tenant hereby agree that so long as any Leasehold Mortgage shall exist or any Leasehold Indebtedness shall remain outstanding:

(i)    Landlord shall accept any act, performance or remedy by Leasehold Mortgagee pursuant to the provisions hereof as if the same had been done or performed by Tenant within the period allowed to Tenant by the terms of this Lease;

(ii)    For the purposes of this Section 10, defaults or other events described in subsections (a), (b), and (f) of Section 27 shall be classified as "**Curable Defaults**" and defaults or other events described in subsections (c), (d) and (e) of Section 27 shall be classified as "**Non-Curable Defaults**"; Non-Curable Defaults being defaults which are

FILED DATE: 3/10/2025 10:51 AM    20241117604

FILED DATE: 3/10/2025 10:51 AM   2024L117604

by their very nature not susceptible of being cured by a third person such as the Leasehold Mortgagee;

(iii)   If any Curable Default occurs and if prior to the expiration of any applicable grace period, Leasehold Mortgagee shall give written notice that it intends to cure all Curable Defaults (and if, in the event any such Curable Default consists of or includes a default in the payment of Rent, Leasehold Mortgagee accompanies such notice with payment of any arrearage in Rent) and within such grace period commences to cure and thereafter pursues the curing of the same continuously and diligently in good faith, then Landlord will not (and will not be entitled to) take action to effect a termination of this Lease or to reenter or take possession of the Property as a consequence of such Curable Default, so long as Leasehold Mortgagee is with all due diligence and in good faith continuously pursuing a course of remedying and making good such Curable Defaults; provided, that if:

(x)   A Curable Default is of such a nature that the curing thereof cannot be effected by Leasehold Mortgagee until it shall have obtained possession of the Property, or any part thereof; and

(y)   Prior to the expiration of any applicable grace period, Leasehold Mortgagee shall give Landlord written notice that it intends to institute foreclosure proceedings upon its Leasehold Mortgage and within such grace period institutes its remedies under the Leasehold Mortgage concerned;

then Landlord will not take any action to effect a termination of this Lease or to re-enter or take possession of the Property as a consequence of such Curable Default so long as (but only so long as) such Leasehold Mortgagee shall continue diligently to prosecute its remedies under the Leasehold Mortgage concerned and makes good or cure all other Curable Defaults (if any) which may occur from time to time and which are susceptible of being cured by Leasehold Mortgagee without its obtaining possession of the Property;

(iv)   If a Non-Curable Default occurs and:

(x)   If the Leasehold Mortgagee shall then be in the process of curing all then existing Curable Defaults (if any) pursuant to the provisions of subsection (iii) above; and

(y)   If prior to the effective date of a termination of this Lease by Landlord or a re-entry or taking possession of the Property by Landlord pursuant to the provisions of Section 28 hereof, Leasehold Mortgagee or its nominee shall have duly executed and acknowledged (in a manner entitling the same to be recorded in the public office in which such documents are then recordable) an instrument whereby Leasehold Mortgagee or its nominee agrees to perform and assume all the terms, covenants, conditions and agreements in this Lease contained to be kept, observed or performed by Tenant (and thereafter the provisions of Section 27 hereof shall be construed, in determining whether an

11

FILED DATE: 3/10/2025 10:51 AM   20241117604

Event of Default shall have occurred, as though all references therein to the Tenant had instead, referred to such Leasehold Mortgagee or nominee);

then Landlord will not take action to effect a termination of this Lease or to re-enter or take possession of the Property or Improvements as a consequence of such Non-Curable Default, so long as Leasehold Mortgagee is with all due diligence and in good faith pursuing a course of remedying and making good all then existing Curable Defaults (if any) and so long as Leasehold Mortgagee is not in default under its aforesaid agreement;

(v)   In the event of the occurrence of a Non-Curable Default, and if prior to the effective date of the termination of this Lease by Landlord pursuant to the provisions of Section 28 hereof, Leasehold Mortgagee shall notify Landlord that Leasehold Mortgagee intends to institute and prosecute a proceeding to foreclose the Leasehold Mortgage, and Leasehold Mortgagee agrees in writing in said notice that during the period of such foreclosure Leasehold Mortgagee accepts, assumes and agrees to perform all the obligations of Tenant under this Lease, then Landlord will not during the period of such foreclosure exercise the rights provided hereunder consequent upon such default;

(vi)   In the event Leasehold Mortgagee has elected to proceed under and has complied with the provisions of this Section 10(b) and such Leasehold Mortgagee or its nominee designated for that purpose has acquired the Improvements and the Leasehold Estate pursuant to any proceedings for foreclosure of such Leasehold Mortgage, or by a voluntary assignment or transfer or this Lease and the leasehold estate and the Improvements in consideration of the satisfaction and cancellation of the indebtedness secured by the Leasehold Mortgage or otherwise, then Leasehold Mortgagee or its nominee, as aforesaid, shall immediately succeed to all the rights of Tenant under this Lease and simultaneously therewith all rights of Tenant under this Lease shall expire and cease and such Leasehold Mortgagee or its nominee shall forthwith execute, and Tenant agrees to join in the execution of, an instrument to confirm the same;

(vii)   Leasehold Mortgagee or its successors and assigns shall be liable hereunder only during such time as Leasehold Mortgagee or it successors and assigns holds the interest of Tenant hereunder, and in the case of a non-monetary default, only to the extent that liability hereunder is created or incurred by an act or omission of Leasehold Mortgagee or its successors and assigns.

(c)   Attornment By Leasehold Mortgagee.   In the event of termination of this Lease or any subsequent lease made pursuant to the provisions of this Lease prior to its stated expiration date, Landlord will execute and deliver to and with Leasehold Mortgagee or its nominee a new lease of the Premises for the remainder of the Term of this Lease, effective as at the date of termination of this Lease, at the rents and upon the covenants, agreements, provisions and terms contained in this Lease, provided that the Leasehold Mortgagee shall give written request to Landlord for such new lease not later than sixty (60) days after the date of termination of this Lease, and such written request is accompanied by payment of all amounts then due Landlord, and by the cure of any other Curable Defaults (or if any such other Curable Defaults shall not be

immediately curable, by the commencement by Leasehold Mortgagee or its nominee of such cure and the agreement of Leasehold Mortgagee or its nominee to prosecute such cure to completion).

(d)    Landlord's Fee Mortgage. It is acknowledged that Landlord shall have the right from time to time and without restriction to mortgage or otherwise encumber its estate or interest in the Premises, subject in each instance to this Lease. Any such mortgage or other encumbrance shall be, and shall expressly provide, that it is subject to and subordinate to this Lease and all rights hereunder as this Lease may be amended, modified or supplemented from time to time. Upon the recordation of such a mortgage or encumbrance, Landlord shall notify Tenant of same, including the address of the holder of such mortgage or encumbrance ("Landlord's Mortgagee"). In the event Landlord's Mortgagee forecloses with respect to Landlord's mortgage, or in the event of any transfer by Landlord of its interest in the Premises in lieu of any such foreclosure, Tenant covenants and agrees to attorn to the purchaser upon any such foreclosure, sale or transfer in lieu thereof and to recognize such purchaser as its new Landlord under this Lease, but only if Landlord's Mortgagee has previously executed a non-disturbance agreement wherein Landlord's Mortgagee agrees to recognize all of Tenant's rights under this Lease and to perform all of the obligations of Landlord under this Lease.

(e)    Notices of Default. If Landlord or any fee mortgagee shall have notified Tenant of the existence of a fee mortgage and of the address to which any notice to a fee mortgagee is to be given, then no notice made by Tenant pursuant to this Lease shall be effective unless Tenant has mailed a copy thereof to the fee mortgagee at its designated address. Upon the occurrence of (i) any default or Event of Default under the Leasehold Mortgage, or (ii) any default or Event of Default on the part of the Landlord under this Lease, Leasehold Mortgagee shall notify any fee mortgagee of the existence of such default or Event of Default and Leasehold Mortgagee shall accept any act, performance or remedy for such fee mortgagee pursuant to the terms hereof as if the same had been done or performed by Landlord within the period allowed to Landlord by the terms of this Lease, or the Tenant under the Leasehold Mortgage, as the case may be.

11.    **VALUATION PROCEEDINGS.**

(a)    Tenant to Protest Real Estate Taxes. At all times during the Term, Tenant shall, at Tenant's sole cost and expense, use commercially reasonable efforts to minimize the valuation of the Property for real estate tax purposes. Provided in Tenant's good faith judgment a reasonable opportunity exists to obtain a reduction in the assessed valuation of the Property, Tenant shall file and pursue all appropriate real estate tax protests and appeals. Landlord shall have the right, at Landlord's sole cost and expense, with Tenant's prior consent (which consent shall not be unreasonably withheld, conditioned or delayed) to seek a reduction in the assessed valuation of the Property if, within thirty (30) days after notice by Landlord, Tenant fails to commence a proceeding to secure such reduction. Landlord shall have the further right, but shall have no obligation, to commence a proceeding without notice to Tenant, or to intervene in and prosecute any proceeding commenced by Tenant, for a reduction of such assessed valuation or valuations which shall be only for a period of time subsequent to the expiration or termination of this Lease. To the extent any tax refund is payable as a result of any proceeding instituted by Landlord or Tenant, and is based upon a payment made by or for the account of Tenant, Tenant shall be authorized to collect such refund, provided that no Event of Default shall then exist

hereunder, and the refund shall not relate to a period subsequent to the expiration or termination of this Lease.  Any such refund shall be subject to Tenant's obligation to reimburse Landlord forthwith (as Additional Rent hereunder) for any expense incurred by Landlord in connection with any such proceeding, including, but not limited to, reasonable attorneys' fees and expenses.

(b)  **Tenant to Reimburse Landlord.**  Landlord shall not be required to join in any assessment proceeding unless the provisions of any law, rule or regulation at the time in effect shall require that such a proceeding be brought by and/or in the name of Landlord or any owner or ground lessor of the Premises, in which event Landlord shall, upon written request, join in such proceedings or permit the same to be brought in its name, upon compliance by Tenant with such requirements as Landlord may reasonably impose.  Tenant covenants that Landlord shall not suffer or sustain any costs or expenses (including, but not limited to, reasonable attorneys fees) or any liabilities in connection with any such proceeding.

12.    **SURRENDER OF PROPERTY.**

(a)    **Surrender at End of Term.**  In the event of the termination of the leasehold estate hereunder, whether at its termination date or earlier, Landlord shall thereupon, be and become the absolute owner of and vested with full title to and ownership of the Improvements located on the Premises, free and clear of all rights or claims of Tenant and all persons hereafter claiming by, through or under Tenant.  When Tenant surrenders the Premises, the Improvements located on the Premises to Landlord, Tenant agrees to satisfy or have satisfied, all mortgages, liens or encumbrances placed on its interests in the Premises and the Improvements.  Tenant agrees to remove, at the termination of this Lease, such of Tenant's goods and its effects as are not permanently affixed to the Premises; to repair any damage caused by such removal; and peaceably yield up the Premises and the Improvements and all alterations and additions thereto, which shall thereupon become the property of the Landlord, in clean and good order, repair and condition, damage by fire or other casualty and reasonable wear and tear excepted.  Title to the Improvements shall automatically vest in Landlord in the event of a termination of the leasehold estate hereunder and without the necessity for the execution or delivery by Tenant of any instrument transferring title.  Notwithstanding the foregoing, Tenant covenants and agrees that upon expiration or any termination of this Lease as aforesaid, Tenant shall, upon Landlord's request, execute, acknowledge and deliver to Landlord any instrument or document reasonably requested by Landlord to confirm title to the Improvements in Landlord.  In the event that Tenant shall fail or refuse to execute, acknowledge or deliver any such instrument or document within ten (10) days after Landlord's request, and thereafter fails or refuses to execute, acknowledge or deliver any such instrument or document within ten (10) days after receipt of a second (2nd) notice from Landlord to Tenant containing the following statement "THIS NOTICE IS BEING **DELIVERED TO TENANT WITH RESPECT TO TENANT'S FAILURE TO EXECUTE, ACKNOWLEDGE OR DELIVER AN INSTRUMENT OR DOCUMENT REQUIRED UNDER SECTION 12(A) OF THE LEASE WITH 820 WEST JACKSON L.L.C., LANDLORD SHALL BE ENTITLED TO BE APPOINTED ATTORNEY IN FACT FOR TENANT TO EXECUTE, ACKNOWLEDGE AND DELIVER ANY SUCH INSTRUMENT OR DOCUMENT IN THE NAME OF TENANT."**  Landlord is hereby appointed attorney in fact for Tenant to execute, acknowledge and deliver any such instrument or document in the name of Tenant.

14

(b)    Personal Property.  Any personal property owned by Tenant which shall remain on the Property after the expiration or termination of this Lease may, after thirty (30) days' notice from Landlord to Tenant that Landlord shall deem such Property abandoned, at the option of Landlord, be deemed to have been abandoned by Tenant and may either be retained by Landlord as its property or be disposed of without accountability, as Landlord may see fit.

(c)    Holding Over.  If Tenant retains possession of the Property or any part thereof after the expiration or termination of the Term, whether by lapse of time, forfeiture or otherwise, Landlord may treat Tenant as a holdover tenant from month to month, at one hundred fifty percent (150%) the Rent provided for in the month immediately preceding the termination of this Lease, or Landlord may seek to evict Tenant pursuant to applicable law.

(d)    Survival.  The provisions of this Section 12 shall survive the expiration or termination of this Lease.

13.    **REPAIRS AND MAINTENANCE.**

(a)    Tenant to Maintain.  Throughout the Term, Tenant shall, at its sole cost and expense, (i) repair, maintain and refurbish the Improvements as needed, and (ii) take good care of the Property, and shall keep the same in good order and condition, ordinary wear excepted, and make all necessary repairs thereto, interior and exterior, structural and non-structural, ordinary and extraordinary and foreseen and unforeseen. The term "repairs" as used herein shall include, but shall not be limited to, all necessary or appropriate replacements and renewals, and, subject to the provisions hereof, all necessary or appropriate alterations, additions and betterments. Tenant agrees, at Tenant's sole cost and expense, to maintain the Premises and the Improvements, including without limitation, the entire exterior and interior, the roof, foundations, water, sewer, gas and electricity connections, pipes, mains and all other fixtures, machinery, apparatus, equipment, and appurtenances thereto together with any and all alterations and additions thereto, in good order, condition and repair, suffering no waste or injury. Tenant shall, at its sole cost and expense, promptly make all necessary repairs and replacements, structural or otherwise, ordinary as well as extraordinary, foreseen as well as unforeseen, in and to the Improvements and any other improvements or equipment now or hereafter located upon the Premises, including, without limitation, the entire interior and exterior of the Improvements, the roof, the foundations, water, sewer, gas and electricity connections, pipes, mains and all other fixtures, machinery, apparatus, equipment and appurtenances now or hereafter belonging to, connected with or used in conjunction with the Premises and the Improvements. All such repairs and replacements shall be sufficient for the proper maintenance and operation of the Property. Tenant shall not permit anything to be done upon the Property (and shall perform all maintenance and repairs thereto so as not) to invalidate, in whole or in part, or prevent the procurement of any insurance policies which may, at any time, be required under the provisions of this Lease.

(b)    Project.  The necessity for and adequacy of the repairs to the Property made or required to be made pursuant to this Lease shall be measured by the standards which are appropriate for office buildings of similar age and construction containing similar facilities. The parties acknowledge that the use of the Property may be changed as provided for in subsection

15

20(a) hereof, in which case the necessity and adequacy of the ongoing maintenance and repairs shall be measured by the standards which are appropriate for the changed use.

(c) Landlord Not Obligated To Repair. Landlord shall not be required to furnish any services or facilities whatsoever to the Premises or the Improvements. Tenant hereby assumes full and sole responsibility for the condition, operation, repair, alteration, improvement, replacement, maintenance and management of the Premises and the Improvements. Landlord shall not be responsible for any loss or damage to the person or property of Tenant, any guests or invitees, any persons using or working on the Premises or the Improvements, or any persons claiming by, through or under, or any agents, employees, heirs, legal representatives, successors or assigns of, any of the foregoing.

(d) Common Areas. Tenant shall, at its sole cost and expense, keep the sidewalks, curbs, entrances, passage-ways, parking spaces and areas adjoining or appurtenant to the Property in a clean and orderly condition, free of snow, ice, rubbish and obstructions.

(e) No Waste. Tenant covenants not to willfully do or permit to be done any act that would substantially impair the value of the Premises, the Improvements or any part thereof.

14. **COMPLIANCE WITH LAWS AND ORDINANCES.**

(a) Tenant To Comply. Throughout the Term of this Lease, Tenant, at its own sole cost and expense, shall promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all Governmental Authorities which may be applicable to the Property, the appurtenances thereof and the sidewalks, alleyways, passageways, curbs and vaults adjoining the Property, or to the use or manner of use of the Property or the owners, tenants, or occupants thereof, whether or not any such law, ordinance, order, rule, regulation or requirement shall necessitate structural changes or improvements or interfere with the use or enjoyment of the Property. Tenant will also procure, pay for and maintain all permits, licenses and other authorizations needed for the operation of its business at the Property.

(b) Tenant to Comply with Insurance. Tenant shall, at its own sole cost and expense, observe and comply with the requirements of the policies of public liability, fire and all other insurance at any time in force with respect to the Improvements.

(c) Tenant to Prevent Violations. Tenant shall, in the event of any violation or attempted violation of the provisions hereof by any subtenant or other occupant of the Property, use reasonable efforts, immediately upon knowledge of such violation or attempted violation, to remedy or prevent the same, as the case may be.

(d) Permitted Contests. Tenant shall have the right, after prior written notice to Landlord, to contest by appropriate legal proceedings, diligently conducted in good faith, in the name of Tenant or Landlord or both, the validity or application of any law, ordinance, rule, order, regulation or requirement of the nature referred to herein, subject to the following: If compliance therewith pending the prosecution of any such proceeding may legally be delayed without the collection of or realization on any lien, charge or liability of any kind against the Property or any

16

part thereof, or any forfeiture or loss of the Property, and without subjecting Tenant or Landlord to any criminal or material civil liability for failure to comply therewith, Tenant may delay compliance therewith until the final determination of such proceeding. In any case where the consent of any Leasehold Mortgagee is required for any of the contests mentioned above, Tenant shall secure such consent prior to commencing such contest. Tenant covenants that Landlord shall not suffer or sustain any costs, expense, or liabilities by reason of any act or thing done or omitted to be done pursuant to this Section 14.

(e)     Compliance with Environmental Laws. During the Term of this Lease: (i) Tenant shall at its own cost comply with "Environmental Laws" (hereinafter defined) as they relate to the Property; (ii) Tenant shall not conduct or authorize any party to generate, process, treat, store, use, transport, transfer, dispose of or incinerate any hazardous substance, pollutant, contaminant, waste, medical waste, oil or petroleum product, asbestos or other gas, substance or liquid deemed to be hazardous waste pursuant to any Environmental Law (collectively, "**Hazardous Materials**") on the Property, without prior written disclosure to and approval by the Landlord; (iii) Tenant shall not take any action that would subject the Property to permit requirements for storage, treatment or disposal of Hazardous Materials under any Environmental Law; (iv) Tenant shall not discharge Hazardous Materials in, to or under any portion of the Property including, without limitation, any drains or sewers; (v) Tenant shall not cause or allow the release, discharge or migration of any Hazardous Materials on, to or from the Property; and (vi) Tenant shall at its own cost arrange for the lawful transportation and off-site disposal of all Hazardous Materials that it generates in accordance with all applicable Environmental Laws. Tenant further agrees that during the Term of this Lease it shall promptly provide Landlord with copies of all summons, citations, directives, information inquiries or requests, notices of potential responsibility, notices of violation or deficiency, orders or decrees, claims, complaints, investigations, judgments, letters, notices of environmental liens or response actions in progress, and other communications, written or oral, actual or threatened, from the United States Environmental Protection Agency, Occupational Safety and Health Administration, or any other federal, state, or local agency or authority, or any other entity or individual, concerning (x) any release, discharge or migration of a Hazardous Material on, to, or from the Property; (y) the imposition of any lien on the Property; or (z) any alleged violation of or responsibility under Environmental Laws. Upon at least five (5) days prior written notice to Tenant, except in case of an emergency, Landlord and Landlord's employees shall have the right to enter the Property and/or conduct appropriate inspections or tests in order to determine Tenant's compliance with Environmental Laws. Upon written request by Landlord, Tenant shall provide Landlord with the results of appropriate reports and tests, with transportation and disposal contracts for Hazardous Materials, with any permits issued under Environmental Laws, and with any other applicable documents to demonstrate that Tenant complies with all Environmental Laws relating to the Premises. If the existence in, on or about the Property of any Hazardous Materials (x) gives rise to liability or to any claim, suit, demand, action, proceeding or the like under any Environmental Law, (y) causes a significant public health effect, or (z) creates a nuisance, Tenant shall promptly take all applicable action which is required pursuant to any applicable Environmental Law to correct, remove, remediate, clean up or otherwise remedy such matter. Notwithstanding the foregoing, Tenant shall have the right to utilize those Hazardous Materials which are normally utilized in the operation and maintenance of an office building, including, but not limited to Hazardous Materials which may be contained in cleaning solutions, fertilizers, paints and paint

17

thinners, gasoline and oil, or products utilized in copying and other office machines, but only so long as such materials are utilized, stored or present on the Property in reasonable amounts, in a manner consistent with the instruction of the manufacturer of such materials and in a manner consistent with applicable federal, state and local laws, ordinances and regulations.

(f)   Environmental Laws Defined. As used herein, "Environmental Laws" shall mean and include all federal, state and local statutes, ordinances, regulations, and rules relating to environmental quality, health, safety, contamination and clean-up, including, without limitation, the Clean Air Act, 42 U.S.C. Section 7401 et seq.; the Clean Water Act, 33 U.S.C. Section 1251 et seq., and the Water Quality Act of 1987; the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. Section 136 et seq.; the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. · Section 1401 et seq.; the National Environmental Policy Act, 42 U.S.C. Section 4321 et seq.; the Noise Control Act, 42 U.S.C. Section 4901 et seq.; the Occupational Safety and Health Act, 29 U.S.C. Section 651 et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., as amended by the Hazardous and Solid Waste Amendments of 1984; the Safe Drinking Water Act, 42 U.S.C. Section 300f et seq.; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act, the Emergency Planning and Community Right-to-Know Act, and Radon Gas and Indoor Air Quality Research Act; the Toxic Substances Control Act, 15 U.S.C. Section 2601 et seq.; the Atomic Energy Act, 42 U.S.C. Section 2011 et seq., and the Nuclear Waste Policy Act of 1982, 42 U.S.C. Section 10101 et seq., and implementing regulations and guidelines promulgated thereunder. Environmental Laws shall also include all state, regional, county, municipal, and other local laws, regulations, and ordinances insofar as they are equivalent or similar to the federal laws recited above or purport to regulate Hazardous Materials.

(g)   Indemnification. Tenant shall indemnify, defend, and hold harmless Landlord, its lenders and their respective agents, partners, officers, directors, members, managers and employees from all claims arising from or attributable to any breach by Tenant of any of its warranties, representations, or covenants in this Section 14, other than any such claims arising from the negligence or willful misconduct of Landlord or its agents. Tenant's obligations hereunder shall survive the termination or expiration of this Lease. Notwithstanding anything to the contrary contained herein, any Leasehold Mortgagee or any nominee of a Leasehold Mortgagee, or purchaser at a foreclosure sale which succeeds to the interest of Tenant hereunder shall not be deemed to have assumed any obligation of Tenant under this subsection 14(g); provided, however, that such Leasehold Mortgagee, purchaser or nominee shall be responsible for any breach of any warranty, representation or covenant under this Section 14 occurring from and after the time it succeeds to the interest of Tenant hereunder, but only during such time as such Leasehold Mortgagee, nominee or purchaser, or their successors and assigns hold the interest of Tenant hereunder, and only to the extent that liability hereunder is created or incurred by an act or omission of such Leasehold Mortgagee or its successors and assigns.

15.   INSURANCE.

(a)   Tenant to Insure. Tenant, at its sole cost and expense, throughout the entire Term of this Lease, shall keep the Improvements insured against loss or damage by fire, lightning and risks covered by a comprehensive "All Risk" or "Special Form" insurance and such other risks as

FILED DATE: 3/10/2025 10:51 AM   2024L117604

Landlord may reasonably require, in amounts equal to the full replacement value of the Improvements, plus the cost of debris removal, with full replacement cost endorsement, with a deductible not to exceed Fifty Thousand and no/100 Dollars ($50,000.00). The full replacement value shall be ascertained from time to time (but not more frequently than once in any Lease Year) at the written request of Landlord by an appraiser, engineer, architect or contractor designated by Tenant and approved by Landlord, and paid by Tenant, or by an engineer, architect, contractor or appraiser in the regular employ of the insurer or Tenant.

(b)    Required Coverage. Tenant, at its sole cost and expense, throughout the entire Term of this Lease, shall also procure and maintain:

(i)    Comprehensive general public liability insurance against personal injury, bodily injury, death and property damage in any way arising in connection with the Property with such limits as Landlord may reasonably require and in any event not less than $5,000,000 single limit coverage ($3,000,000 of which may be provided by an umbrella policy);

(ii)    Broad form boiler and pressure vessel insurance, including pressure pipes, in such amounts as Landlord may reasonably require providing for full repair and replacement cost coverage;

(iii)    Rent loss insurance in an amount equal to the Rent and the other sums and charges required to be paid by Tenant hereunder for a twelve (12) month period, including, without limitation, Impositions and insurance premiums payable by Tenant hereunder. Subject to the rights of a Leasehold Mortgagee, in the event that any of the Improvements shall be damaged or destroyed, Tenant shall and hereby does assign to Landlord all claims under the policies of such insurance and all amounts payable thereunder, and all net proceeds, when collected by Landlord, shall be applied toward payment of the Rent and such other sums and charges payable hereunder, and any balance shall be held by Landlord as additional security for the payment of such Rent and such other sums and charges until completion of the restoration of the damaged or destroyed Improvements, at which time such proceeds or balance thereof shall be paid to Tenant; provided, however, that such proceeds or balance thereof shall not be paid to Tenant if an Event of Default shall exist hereunder, and provided further, however, that nothing herein contained shall be deemed to relieve Tenant of its obligations to pay all Rent and other sums and charges required to be paid by Tenant hereunder;

(iv)    During the period of any alterations or improvements to the Property (i) insurance covering claims based upon the owner's contingent liability not covered by the insurance provided in subsection (b)(i) above and (ii) Worker's Compensation insurance covering all persons engaged in making such alterations or improvements; and

(v)    Such other insurance and in such amounts as may from time to time be reasonably required by Landlord against other insurable hazards which at the time are commonly insured against in the case of premises similarly situated, due regard being or to be given to the height or type of building, its construction, use and occupancy.

19

FILED DATE: 3/10/2025 10:51 AM 20241117604

(c)　Inability to Obtain Coverage. In the event Tenant is unable to obtain some portion of the insurance required by this Lease in the marketplace at any cost, Tenant shall not be deemed to be in default hereunder, provided (i) Tenant uses reasonable efforts to obtain such coverage; (ii) Tenant indemnifies Landlord for any loss, cost, liability or expense (including reasonable attorneys' fees) suffered or incurred by Landlord as a result of any occurrence which otherwise would have been covered by such insurance, as provided for herein.

16.　**INSURANCE POLICIES.**

(a)　Insurers. All insurance provided for in this Lease shall be effected under valid and enforceable policies, in such forms and, where not expressly provided for above, in such amounts, as may from time to time be reasonably satisfactory to Landlord, issued by financially sound and responsible insurance companies authorized to do business in the State of Illinois which have been approved by Landlord (which approval shall not be unreasonably withheld) and which have been rated at least A-VIII or better by Best's Key Rating Guide. On or before the Commencement Date, and thereafter not less than thirty (30) days prior to the expiration dates of the expiring policies (or, in the case of liability insurance, certificates of the insurers in form reasonably satisfactory to Landlord), Tenant shall deliver to Landlord originals of all policies of insurance; provided, however, that if the originals of any such policies are required under the terms of any Leasehold Mortgage permitted hereunder to be delivered to a Leasehold Mortgagee, Tenant shall cause same to be done and shall in such case deliver to Landlord a certified copy of each policy so delivered, together with an insurance company certificate or memorandum of such policy, in form reasonably satisfactory to Landlord.

(b)　No Separate Coverage. Tenant shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be furnished by, or which may be reasonably required to be furnished by, Tenant unless Landlord is included therein as an insured, with loss payable as in this Lease provided. Tenant shall immediately notify Landlord of the taking out of any such separate insurance and shall cause the policies therefor to be delivered as required herein.

(c)　Landlord Also Named. All policies of insurance shall name Landlord and Tenant as the insureds or additional insureds, as their respective interests may appear. In the event of a Leasehold Mortgage, said insurance shall name the Leasehold Mortgagee as a mortgagee loss payable with respect to the casualty insurance and as an additional insured with respect to the other insurance required hereunder.

(d)　Endorsements. All policies of insurance provided for in this Section 15 shall contain, to the extent available, clauses or endorsements to the effect:

(i)　That no act or negligence of Tenant, or anyone acting for Tenant, or of any subtenant or occupant of the Property or any use of the Property for purposes more hazardous than permitted by the terms of the policies which might otherwise result in a forfeiture of such insurance or any part thereof shall in any way affect the validity or enforceability of such insurance as against Landlord;

20

FILED DATE: 3/10/2025 10:51 AM   20241117604

(ii)     That such policies shall not be changed or canceled without at least thirty (30) days prior written notice to Landlord; and

(iii)    That Landlord shall not be liable for any premiums therefor or subject to any assessments thereunder.

(e)     Loss Adjustment. Losses under each policy of insurance shall be adjusted with the insurers and/or underwriters by Tenant and to the extent required by a Leasehold Mortgage, the Leasehold Mortgagee. All costs and expenses of collecting or recovering any insurance proceeds under such policies, including, but not limited to, any and all fees of attorneys, appraisers and adjusters, shall be paid by Tenant.

17.     DAMAGE OR DESTRUCTION BY FIRE OR OTHER CASUALTY.

(a)     Damage. In the event of any damage or loss by fire or other casualty whatsoever to any of the Improvements, Tenant shall give prompt written notice to Landlord and shall, whether or not any insurance proceeds are available or adequate for such purpose and regardless of the dollar amount of such damage or loss, with reasonable diligence (subject to Unavoidable Delays), at Tenant's sole cost and expense, repair and restore the Improvements or the portion thereof so damaged as nearly as possible to the condition the same were in immediately prior to such damage. Such repairing, restoring and replacement shall be without cost, charge or expense of any kind to Landlord.

(b)     Repair and Restoration. With respect to any repair or restoration required to be made by Tenant pursuant to subsection (a) above the reasonably estimated cost of which shall exceed One Million and no/100 Dollars ($1,000,000.00), Tenant shall, prior to the commencement of such repair or restoration, furnish to Landlord the following:

(i)     plans and specifications for Landlord's approval, which approval shall not be unreasonably withheld or delayed, which plans and specifications shall be prepared by a licensed architect or engineer;

(ii)    an estimate of the cost of such repairs or restorations certified by the architect or engineer by whom the plans and specifications were prepared;

(iii)   if requested by Landlord, copies of all requisite licenses, permits and authorizations from all Governmental Authorities having jurisdiction over the Property covering any such repair work or restoration; provided, however, that nothing contained in this subsection (b) shall be deemed to relieve Tenant of any of its obligations pursuant to subsection (a) above.

(c)     Use of Insurance Proceeds. If by reason of any damage or destruction, any sums are paid under an insurance policy, such sums shall be paid as follows:

(i)     If the aggregate insurance proceeds received by reason of any single instance of damage or destruction shall be less than One Million and no/100 Dollars ($1,000,000.00), such insurance proceeds shall be paid over to Tenant, and Tenant shall

21

hold the same as a trust fund to be used first for the payment of the entire cost of restoring, repairing or rebuilding the damaged or destroyed Improvements before using the same for any other purpose; provided, however, that if any Event of Default shall exist hereunder at the time such proceeds are so to be paid over to Tenant, such proceeds shall be paid over to Landlord and not to Tenant; and

(ii)     If the aggregate insurance proceeds received by reason of any single instance of damage or destruction shall be One Million no/100 Dollars ($1,000,000.00) or more, such proceeds shall be paid over to Landlord and held and disposed of as hereinafter, provided however, in the event a Leasehold Mortgage exists, such insurance proceeds shall be payable to the Leasehold Mortgagee, to be applied pursuant to the provisions of subsection 17(g) below. Funds so held by the Landlord shall be deposited in interest bearing accounts, all interest accruing to the benefit and credit of the Tenant. The provisions of this subsection (c) shall not apply to the proceeds of any rent insurance policy, which shall be paid as provided in subsection 15 (b)(iii) of this Lease.

(d)     Reimbursement. Upon receipt by the Landlord of:

(i)     A certificate of Tenant dated not more than thirty (30) days prior to the date of such receipt (A) requesting the payment of a specified amount of such insurance proceeds; (B) describing in reasonable detail the work and materials applied to the restoration or replacement of the damaged or destroyed Improvement since the date of the last certificate of Tenant; (C) stating that such specified amount does not exceed the cost of such work and materials; and (D) stating that such work and materials have not previously been made the basis of any request for or any withdrawal of money; and

(ii)     A certificate of an independent engineer or an independent architect designated by Tenant, stating (A) that the work and materials described in the accompanying certificate of Tenant were satisfactorily performed and furnished and were necessary, appropriate or desirable to the restoration or replacement of the damaged or destroyed Improvement, in accordance with the plans and specifications therefor; (B) that the amount specified in such certificate of Tenant is not in excess of the cost of such work and materials; and (C) the additional amount, if any, required to complete the restoration or replacement of the damaged or destroyed Improvement; and

(iii)     An endorsement of a title company reasonably satisfactory to Landlord, dated not earlier than the date of such certificate of Tenant, amending Landlord's title policy to insure that as of the date thereof there are no exceptions to title to the Property other than permitted exceptions and the Property is not subject to any mechanic's, laborer's, materialman's or other similar lien, encumbrance or charge; and

(iv)     Such contractor's and subcontractors sworn statements and waivers of lien as may be reasonably required by Landlord;

Landlord shall pay to Tenant or, at the option of Landlord, the persons named in the certificate and sworn statements delivered by Tenant, the amount of such insurance proceeds specified in

22

such certificate of Tenant; provided, however, that the balance of insurance proceeds deposited with Landlord shall not be reduced below the amount specified in the certificate of the independent engineer or the independent architect as the amount required to complete the restoration or replacement of the damaged or destroyed Improvement. Each such payment made to Tenant shall be held by Tenant in trust and shall be used solely by Tenant for the payment of the cost of the work and materials described in the certificate of Tenant; or if such cost or any part thereof has theretofore been paid by Tenant out of its own funds, then for the reimbursement to Tenant of any such cost or part thereof so paid by it. If there shall remain on deposit with the Landlord any balance of insurance proceeds after any damaged or destroyed Improvement shall have been completely restored or replaced, as evidenced by a certificate of such independent engineer or independent architect delivered to the Landlord, such balance of insurance proceeds shall be paid to Tenant. Promptly after completion of the restoration or replacement work, Tenant shall procure, at Tenant's sole cost and expense, all such approvals by Governmental Authorities, if any, of the completed work as may be required by any applicable law or ordinance or any applicable rule or regulation of Governmental Authorities, and shall promptly deliver photocopies thereof to Landlord.

(e)    Termination of Lease. Upon the expiration or earlier termination of this Lease, however caused, any insurance proceeds then held by Landlord or by Tenant, as the case may be, and not previously applied to the cost of repairing, restoring or rebuilding the damaged or destroyed Improvement shall be paid to Landlord; provided, however, that if such termination occurs pursuant to Section 24 hereof, such insurance proceeds shall be deemed to be part of the condemnation award and shall be disposed of as provided in said Section 24.

(f)    No Right To Terminate or Abatement of Rent. No destruction of or damage to the Improvements, or any part thereof, by fire or other casualty whatsoever, whether such damage or destruction be partial or total or otherwise, shall entitle or permit Tenant to surrender or terminate this Lease or shall relieve Tenant from its liability to pay in full the Rent and other sums and charges payable by Tenant hereunder, or from any of its other obligations under this Lease, and Tenant hereby waives any rights now or hereafter conferred upon it by statute or otherwise to surrender this Lease or quit or surrender the Property or any part thereof, or to receive any suspension, diminution, abatement or reduction of the Rent or other sums and charges payable by Tenant hereunder on account of any such destruction or damage, except that to the extent to which Landlord, as opposed to mortgagees of the Property or Tenant's leasehold interest hereunder, shall have received and retained any sum as proceeds of any rent insurance, Tenant shall be entitled to a credit therefor against its obligations under this Lease to pay the Rent and such other sums and charges.

(g)    Compliance with Leasehold Mortgage. Notwithstanding anything to the contrary contained herein, in the event insurance proceeds are available for reimbursement following a casualty or other loss in accordance with the terms of this Lease, and a Leasehold Mortgage exists, Landlord agrees to waive the requirements set forth in subsection 17(d) hereof, provided such proceeds are disbursed from time to time upon Leasehold Mortgagee being furnished with the following:

23

(i)    Evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding;

(ii)    The Improvements for which such loss or damage has resulted shall be capable of being restored (including replacements) to their pre-existing condition and utility as existed immediately prior to the occurrence of the loss or damage then in question in all material respects, and prior to the expiration of business interruption insurance;

(iii)    Tenant shall demonstrate to the Leasehold Mortgagee's reasonable satisfaction the Tenant's ability to pay the Leasehold Mortgage coming due during such restoration period, provided that so long as Tenant shall maintain business interruption insurance in an amount sufficient to pay the Rent as it comes due during such period of restoration, then such requirement shall be deemed satisfied;

(iv)    Within 60 days following the date of notice under the preceding subparagraph (iv) and prior to any insurance proceeds being disbursed to the Tenant, then, if the loss or damage exceeds ten percent (10%) of the principal amount of the Leasehold Mortgage, the Tenant shall have provided the Leasehold Mortgagee all of the following:

(1)    A copy of all material construction contracts and architectural or engineering agreement for completion of the repair and restoration work in accordance with such plans and specifications;

(2)    Builder's risk insurance for the full cost of construction with the Leasehold Mortgagee named under a standard mortgagee loss-payable clause; and

(3)    Copies of all permits and licenses necessary to complete the work in accordance with the plans and specifications.

(v)    The Tenant shall commence such work as soon as reasonably possible after such loss or damage, but in no event longer than one hundred eighty (180) days following such loss or damage, and shall diligently pursue such work to completion, all of which shall be subject to Unavoidable Delays;

(vi)    If the loss or damage exceeds Five Hundred Thousand and no/100 Dollars ($500,000.00), each disbursement by the Leasehold Mortgagee of such insurance proceeds shall be funded subject to conditions and in accordance with disbursement procedures which a commercial construction lender would typically establish in the exercise of sound banking practices and shall be made only upon receipt of disbursement requests on an AIA G702/703 form (or similar form approved by the Leasehold Mortgagee) signed and certified by the Tenant and its architect and general contractor with appropriate invoices, lien waivers and any other documents, instruments or items which may be required by the Leasehold Mortgagee;

24

(vii)   The Leasehold Mortgagee shall have a first lien and security interest in all building materials and completed repair and restoration work and in all fixtures and equipment acquired with such insurance proceeds, and the Tenant shall execute such documents as may be necessary to evidence and perfect such security interest;

(viii)   Such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Leasehold Mortgagee may reasonably require and approve.

No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than proceeds of insurance shall be disbursed prior to disbursement of such proceeds; and at all times, the undisbursed balance of such proceeds remaining in the hands of Leasehold Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Leasehold Mortgagee by or on behalf of Tenant for that purpose, shall be at least sufficient in the reasonable judgment of Leasehold Mortgagee to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien.

18.   **CHANGES AND ALTERATIONS BY TENANT**.

(a)   Tenant's Alterations.   The term "**Tenant's Alterations**", as used in this Lease, shall mean the following acts:

(i)   All demolitions of the whole or any material part of any Improvement now or hereafter erected upon the Premises;

(ii)   All material excavations at any time made or to be made in, on or about the Premises;

(iii)   All material exterior alterations and additions to the Improvements which are structural in nature and which materially affect the footprint of any building;

(iv)   The construction of (A) any replacement building on the Premises and (B) any additional buildings or material improvements upon the Premises; and

(v)   Any alteration which, in any single instance, is estimated to cost in excess of One Million and no/100 Dollars ($1,000,000.00).

Tenant's Alterations shall be made only with Landlord's prior consent, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, Tenant shall have the right, without Landlord's consent, to perform (A) any tenant improvements being made in connection with the lease of space within any building constructed on the Premises and (B) any construction required to comply with applicable laws and/or ordinances.

(b)   Architect; Plans and Specifications. Tenant's Alterations shall be made under the supervision of a licensed architect or engineer selected by Tenant, and shall be made in

accordance with detailed plans and specifications prepared by such architect or engineer. Copies of all such plans and specifications shall be delivered by Tenant to Landlord, and shall be subject to Landlord's prior approval (which approval will not be unreasonably withheld or delayed). Approval shall be deemed given if Landlord shall not have given notice of disapproval to Tenant within fifteen (15) business days following receipt of such plans and specifications.

(c)     Other Construction. If any plans and/or specifications are prepared in connection with any construction on the Property the estimated cost of which is less than One Million and no/100 Dollars ($1,000,000.00), Tenant shall upon written request from Landlord, furnish copies thereof to Landlord, but Landlord's approval thereof shall not be required.

(d)     Consent of Leasehold Mortgagee Required. Notwithstanding anything contained herein, no change or alteration, whether structural or non-structural in nature, and regardless of the estimated cost thereof, shall be made unless Tenant first obtains all consents required under the Leasehold Mortgage.

(e)     Requirements for Tenant's Alterations. Tenant covenants and agrees that no Tenant's Alterations will be made except in compliance with, and Tenant hereby covenants that it will comply with, each of the following provisions:

(i)     All Tenant's Alterations shall be made with reasonable diligence and dispatch (subject to Unavoidable Delays) in a first class manner and with first class materials and workmanship.

(ii)     Before any Tenant's Alterations are begun, Tenant shall procure, at its own sole cost and expense, all necessary licenses, permits, approvals and authorizations from all Governmental Authorities and shall upon written request from Landlord, deliver photocopies thereof to Landlord. Upon Tenant's request, Landlord shall promptly join in the application for such licenses, permits, approvals and authorizations whenever such action is necessary, and Tenant covenants that Landlord will not suffer, sustain or incur any cost, expense or liability by reason thereof.

(iii)     All Tenant's Alterations shall be made in compliance and conformity with all applicable laws and ordinances (including, but not limited to, all building and zoning laws and ordinances), consents and easements affecting the Property and with all applicable licenses, permits, authorizations and approvals and with all applicable rules, regulations, orders and requirements of all Governmental Authorities as well as those at the National and Local Boards of Fire Underwriters or any other body or bodies exercising similar functions.

(iv)     In making any Tenant's Alterations, Tenant shall not violate the terms or conditions of any insurance policy affecting or relating to the Property.

(v)     Promptly after the completion of any Tenant's Alterations, Tenant shall procure, at Tenant's sole cost and expense, all such approvals by Governmental Authorities, if any, of the completed Tenant's Alterations as may be required by any

26

applicable law or ordinance or any applicable rule or regulation of Governmental Authorities, and such insurance organizations' approvals, if any, as may be required or customary in connection therewith, and shall promptly deliver photocopies thereof to Landlord.

(vi)    Tenant shall pay all costs, expenses and liabilities arising out of or in connection with or by reason of any Tenant's Alterations, and shall keep the Property free and clear of all liens, claims and encumbrances in any way arising out of or in connection with or by reason of any Tenant's Alterations, subject to the provisions of Section 19 hereof.

(vii)    Tenant shall, on written demand from Landlord, promptly deliver to Landlord a copy of a final survey of the Premises showing the completed Tenant's Alterations, if one is prepared in connection with such Tenant's Alterations.

(viii)    No Tenant's Alteration's shall be made which would render title to the Premises or any part thereof unmarketable, or which would in Tenant's good faith judgment reduce the value of the Property below the value thereof immediately prior to the making of such Tenant's Alterations.

(ix)    No Tenant's Alterations shall be made which would tie in or connect any building or structure on the Premises with any other building or structure located outside the boundary lines of the Premises.

(f)    Landlord's Property. All Tenant's Alterations put in at the expense of Tenant shall be the Property of Tenant when put it, but shall become the property of Landlord and shall remain upon and be surrendered with the Premises as a part thereof at the termination of this Lease, without compensation or allowance to Tenant, unless not permanently attached to the Premises, in which case, Tenant may, at Tenant's election, remove Tenant's Alterations and restore the Premises to the condition prior to such installation, ordinary wear and tear and casualty and condemnation accepted.

(g)    No Contribution From Landlord. Landlord shall not be required to make any contribution to the cost of any Tenant's Alterations or any part thereof, and Tenant covenants that Landlord shall not be required or requested to pay any cost, expense or liability arising out of or in connection with or by reason of any Tenant's Alterations.

(h)    Minimize Unavoidable Delays. Tenant covenants that it will exercise due diligence to shorten and terminate all Unavoidable Delays with all reasonable speed, provided the ability to do so is within Tenant's reasonable control.

19.    COVENANT AGAINST LIENS.

(a)    No Liens. Except for any Leasehold Mortgage, neither Tenant nor Landlord shall create or permit to be created or to remain, and shall discharge, any lien, encumbrance or charge levied on account of any Imposition or any mechanic's, laborer's, or materialmen's lien, or any mortgage, conditional bill of sale, title retention agreement or security agreement or otherwise,

27

which might or does constitute a lien, encumbrance or charge upon the Property, or any part thereof, or the income therefrom, having a priority or preference over or ranking on a parity with the estate, rights or interest of Landlord or Tenant in the Property, or any part thereof, or the income therefrom, and Tenant will not suffer any other matter or thing whereby the estate, rights and interests of Landlord in the Property or any part thereof might be impaired; provided that any Imposition may, after the same becomes a lien on the Property, be paid or contested in accordance with Section 9 hereof, and any mechanic's, laborer's, or materialmen's lien may be discharged in accordance with this Section 19 or contested in accordance with Section 9 hereof.

(b)     Discharge of Liens. If any mechanic's, laborer's or materialmen's lien shall at any time be filed against the Property or any part thereof, Tenant, or Landlord, as the case may be, within thirty (30) days after notice of the filing thereof, shall cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise; provided, however, that if Tenant shall desire to contest the validity or amount of any such lien, Tenant may do so as provided in Section 9 hereof. If Tenant or Landlord, as the case may be, shall fail either to cause such lien to be discharged or to contest such lien as provided herein within the aforementioned period of thirty (30) days then, in addition to any other right or remedy, the other party hereto may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings, and in any such event the discharging party shall be entitled, if it so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of the judgment in favor of the lienor, with interest, costs and allowances. In any event, if any suit, action or proceedings shall be brought to foreclose or enforce any such lien (whether or not the prosecution thereof was so compelled by Landlord or Tenant), the party responsible for the filing of the lien shall, at its own sole cost and expense, promptly pay, satisfy and discharge any final judgment entered therein, in default of which the other party hereto, at its option, may do so. Any and all amounts paid by either party, and all costs and expenses paid or incurred by either party in connection with any or all of the foregoing matters, including, but not limited to, reasonable attorneys' fees and expenses, together with interest thereon at the Lease Interest Rate from the respective dates of the party's making of such payments, shall be paid by the party responsible for the filing of the lien to the other party hereto on demand.

(c)     No Consent From Landlord. Nothing in this Lease contained shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied by inference or otherwise, to any contractor, subcontractor, laborer, materialman, architect or engineer for the performance of any labor or the furnishing of any materials or services for or in connection with the Property or any part thereof. Notice is hereby given that Landlord shall not be liable for any labor or materials or services furnished or to be furnished to Tenant upon credit, and that no mechanic's or other lien for any such labor, materials or services shall attach to or affect the fee or reversionary or other estate or interest of Landlord in the Property or in this Lease.

20.     **USE AND OPERATION OF PROPERTY.**

(a)     Use. Tenant shall cause the Property to be used and occupied as and for an office building with first floor retail and for related purposes only, or such other retail, office, industrial

28

or residential use as approved in writing by Landlord, which approval shall not be unreasonably withheld or delayed. Such approval shall be deemed approved if each of the following shall have occurred: (i) Landlord shall have failed to either (x) notify Tenant of its approval or disapproval or (y) request additional information reasonably required by Landlord in order to reach a decision with respect to such request within seven (7) business days (the "Approval Period") following Landlord's receipt of Tenant's written request together with any and all information and documentation relating thereto reasonably requested by Landlord to reach a decision, provided that such request to Landlord is marked in bold lettering with the following: "**LANDLORD'S RESPONSE IS REQUIRED WITHIN SEVEN (7) BUSINESS DAYS OF RECEIPT OF THIS NOTICE PURSUANT TO THE TERMS OF THE GROUND LEASE WITH V820JACKSON, LLC**" and the envelope containing the request must be marked "**PRIORITY – DEEMED APPROVAL MAY APPLY**".

(b)     No Unlawful Use. Tenant shall not use, and shall take reasonable efforts to prevent others from using, the Property or any part thereof, for (i) any purpose other than as stated in subsection (a) above, or (ii) any unlawful purpose, or (iii) any purpose which violates any certificate of occupancy or certificate of compliance covering or affecting the use of the Property or any part thereof. Tenant shall not suffer any act to be done or any condition to exist on the Property or any part thereof which may, in law, constitute a nuisance, public or private, or which may make void or voidable any insurance with respect thereto, and Tenant shall not permit or suffer any article to be brought thereon which may be dangerous unless safeguarded as required by law.

21.     **ASSIGNMENT AND SUBLETTING.** The parties hereto hereby agree as follows:

(a)     No Transfer or Assignment. Subject to subsection 21(b) below, Tenant shall not (i) make, suffer or permit any transfer of this Lease or any interest hereunder (other than a Leasehold Mortgage or any transfer or assignment of a Leasehold Mortgage), by operation of law, or (ii) assign or convey this Lease or any interest thereunder without, in each and every such case, Landlord's prior written consent thereto first had and obtained by Tenant; provided, however, that Landlord's consent may not be unreasonably withheld or delayed. Notwithstanding the above, Landlord shall not have the right to withhold its approval to an assignment of this Lease provided that (i) any assignment of this Lease shall include the conveyance of the Improvements to the assignee; and (ii) either the net worth of such assignee shall either be (x) equal to or greater that the net worth of the then Tenant under this Lease or (y) the assignee has significant experience in owning and/or operating buildings substantially similar to the Improvements or any permitted replacement thereof. The foregoing shall not prevent an assignment of this Lease to a Leasehold Mortgagee, its nominee or a foreclosure sale purchaser pursuant to a foreclosure of a Leasehold Mortgage or deed in lieu thereof, or one subsequent assignment by such Leasehold Mortgagee, nominee or purchaser after succeeding to the interest of the tenant hereunder.

(b)     Subleases. Tenant may, on an ongoing basis during the Term of this Lease, sublet or license on the Property for office uses without restriction or industrial, residential, retail or any other uses approved by Landlord pursuant to subsection 20(a) above.

29

(c)     <u>Assignment or Sublease With Consent of Landlord</u>.  If Tenant shall, with Landlord's prior consent first had and obtained, as in <u>subsection 21(a)</u> above provided, assign or convey this Lease or any interest hereunder, or if Tenant shall sublet all or any part of the Property:

(i)     Except as set forth in <u>subsection 10(b)(vii)</u> above, Tenant shall remain liable for the payment of Rent and all other charges herein reserved and shall remain liable for the performance and observance of all the terms, covenants and conditions herein contained on the part of Tenant or be paid, kept and performed unless assignee's net worth is equal to or greater than Tenant's net worth at the time of the assignment;

(ii)     No assignment of this Lease, no matter when or by whom made, shall be valid unless the assignor shall deliver to Landlord, together with an executed copy of the assignment on or before the date possession is given to the assignee, a recordable instrument in and by which the assignee of this Lease assumes all the burdens and obligations of Tenant hereunder, in which instrument the assignor shall join and agree to remain bound by all of the terms, covenants and conditions of this Lease on Tenant's part to be performed and observed;

(iii)     No sublease shall contain an option to purchase all or any portion of the Improvements;

(iv)     All subleases of the Property shall contain provisions subordinating them to this Lease, provided that each such sublease shall further provide that the Landlord has agreed (and does hereby agree) that if the Lease shall be terminated no such sublesee's occupancy or lease shall be disturbed by Landlord if such sub-lessee is not in default under its sublease beyond any applicable cure period and promptly attorns to Landlord;

(v)     At any time, and from time to time, upon the written request of Landlord, not more than once a year, Tenant shall deliver to Landlord a schedule of all subleases of the Property then in effect, which schedule shall set forth the names of the subtenants, the apartments or space occupied, the rental rates, the security deposits; and the expiration dates of the terms of such subleases; provided however, that if this Lease is assigned, or if the Property or any part thereof is sublet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, unless Tenant shall cure such default within the time permitted by this Lease, collect rent from the assignee, subtenant or occupant and apply the net amount collected to the Rent herein reserved, but no such collection shall be deemed a release of Tenant from the further performance by Tenant of the terms, covenants and conditions of this Lease on the part of Tenant to be performed.

22.     <u>ENTRY ON PROPERTY BY LANDLORD, ETC.</u>

(a)     <u>Landlord's Right to Enter</u>.  Subject to the rights of subtenants and following reasonable prior notice to Tenant by Landlord, Tenant shall permit Landlord and its authorized representatives and designees, including architects and engineers, to enter the Property at all reasonable times for the purpose of (i) inspecting the same; (ii) showing the Property to

prospective lenders and purchasers; and (iii) making any repairs thereto and performing any work therein that may be necessary by reason of Tenant's failure to make any such repairs or perform any such work or to commence the same for thirty (30) days after notice from Landlord (or without notice in case of emergency, provided Landlord shall use best efforts to notify Tenant prior to any such entry). Nothing herein contained shall be construed as imposing any duty upon Landlord to do any such work, and the performance thereof by Landlord shall not constitute a waiver of Tenant's default in failing to perform the same. Landlord shall use commercially reasonable efforts to minimize disturbance to any occupant(s) of the Property.

(b)      Landlord Not Liable. Landlord, during the progress of any work at the Property performed or caused to be performed by it in accordance with subsection 22(a)(iii) above, may keep and store thereon all necessary materials, tools, supplies and equipment. Landlord shall not be liable for inconvenience, annoyance, disturbance, loss of business, or other damage to Tenant or any occupant of the Property by reason of the making of such repairs or the performance of any such work, or on account of bringing materials, tools, supplies and equipment into or through the Property during the course thereof, and the obligations of Tenant under this Lease shall not be affected thereby. In making any such repairs or doing any such work, Landlord shall proceed with such work so as to avoid to the extent possible unreasonable inconvenience to Tenant or any occupant of the Property.

23.    **INDEMNIFICATION OF LANDLORD.**

(a)      Indemnification. Tenant will protect, indemnify and save Landlord and the Property harmless from and against all liabilities, obligations, claims, liens, damages, penalties, causes of action, costs and expenses, including without limitation, reasonable attorneys' fees and expenses (collectively "Claims") imposed upon, incurred by or asserted against Landlord by reason of (i) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Property or any part thereof or the adjoining properties, sidewalks, curbs, streets or ways, or resulting from an act or omission of Tenant or anyone claiming by, through or under Tenant; (ii) any failure on the part of Tenant to perform or comply with any of the terms of this Lease; or (iii) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof, except for any Claims arising from the negligence or willful misconduct of Landlord or its agents. In case any action, suit or proceeding is brought against Landlord by reason of any such occurrence Tenant will, at Tenant's sole expense, resist and defend such action, suit or proceeding, or cause the same to be resisted and defended by counsel selected by Landlord. Landlord will protect, indemnify and save Tenant and the Property harmless from and against all liabilities, obligations, claims, liens, damages, penalties, causes of action, costs and expenses, including without limitation, reasonable attorneys' fees and expenses (collectively "Claims") imposed upon, incurred by or asserted against Tenant by reason of Landlord's or Landlord's agents negligence or willful misconduct.

(b)      Tenant's Waiver of Claims. Tenant waives all claims it may have against Landlord and Landlord's agents for damage or injury to person or property sustained by Tenant or any persons claiming through Tenant or by any subtenant or occupant of the Property, or by any other person, resulting from any accident on or about the Property or resulting directly or indirectly from any act or neglect of any person. This waiver shall include, but not by way of

31

limitation, damage caused by water, snow, frost, steam, excessive heat or cold, sewage, gas, odors, or noise, or caused by bursting or leaking of pipes or plumbing fixtures, and shall apply equally whether any such damage results from the act or neglect of Tenant or of any other person, other than Landlord or Landlord's agents to the extent permitted by law, and whether such damage be caused or result from anything or circumstance above mentioned or referred to, or to any other thing or circumstance whether of a like nature or of a wholly different nature. All personal property belonging to Tenant or any occupant of the Property that is in or on any part of the Property shall be there at the risk of Tenant or of such other person only, and Landlord shall not be liable for any damage thereto or for the theft or misappropriation thereof.

(c)     Defense By Tenant. In case any action or proceeding is brought against Landlord by reason of any claim mentioned in this Section 23, Tenant, upon notice from Landlord, shall, at Tenant's expense, resist or defend such action or proceeding in Landlord's name, if necessary, by counsel for the insurance company, if such claim is covered by insurance, otherwise by counsel selected by Landlord.

(d)     No Insurance. The provisions of this Section 23 shall not in any way be affected by the absence in any case of any covering insurance or by the failure or refusal of any insurance company to perform any obligation on its part.

24.     CONDEMNATION.

(a)     Definitions. The following definitions shall apply to this Section 24:

"Award" means all compensation paid for a Taking, whether pursuant to judgment or by agreement or otherwise.

"Notice of Intended Taking" means any written notice or notification on which a reasonably prudent man would rely and which he would interpret as expressing an existing intention of taking as distinguished from a mere preliminary inquiry or proposal. It includes but is not limited to the service of a condemnation summons and complaint on a party to this Lease. The notice is considered to have been received when a party to this Lease receives from the condemning agency or entity a notice of intent to take, in writing, containing a description or map of the Taking which reasonably defines the extent of the Taking.

"Partial Taking" means any taking of the fee title of the Property and/or the Improvements that is not a Total Taking, a Substantial Taking or Temporary Taking.

"Substantial Taking" means the taking of so much of the Property and/or the Improvements that the portion of the Premises and Improvements not so taken cannot be so repaired or reconstructed, taking into consideration the amount of the Award available for repair or reconstruction, as to constitute complete, rentable structures, capable of producing a proportionately fair and reasonable net annual income after payment of all operating expenses, Base Rent (as reduced as a result of the Taking), additional rent and all other charges payable under this Lease, and after performance of all covenants and conditions required of Tenant by law and under this Lease.

32

"Taking" means a taking or damaging, including severance damage, by eminent domain or by inverse condemnation for any public or quasi-public use under any statute. The Taking may occur as a result of a transfer pursuant to the recording of a final order in condemnation, a voluntary transfer or conveyance to the condemning authority or entity under threat of condemnation, or a transfer while condemnation proceedings are pending. Unless otherwise provided, the Taking shall be deemed to occur as of the earlier of (i) the time title is taken by the condemnor or (ii) the time the condemnor is authorized to take possession of the Property as stated in an order for possession.

"Temporary Taking" means a Taking of all or any material part of the Premises and/or Improvements for a term certain which term is specified at the time of Taking and which is less than six (6) months. Temporary Taking does not include a Taking which is to last for an indefinite period and/or which will terminate only upon the happening of a specified event unless it can be determined at the time of the Taking substantially when such event will occur.

"Total Taking" means the Taking of the fee title to all the Premises and the Improvements.

(b)    Parties' Rights and Obligations to be Governed by Lease. If during the Term of this Lease, there is any Taking of all or any part of the Premises, the Improvements or any interest in this Lease, the rights and obligations of the parties shall be determined in accordance with the provisions of this Section 24.

(c)    Notice. In the event that either Landlord or Tenant receives (i) a Notice of Intended Taking or (ii) service of any legal process relating to a Taking of the Premises and/or Improvements, such party shall promptly give the other notice of the date and contents of such notice.

(d)    Representation in Proceedings or Negotiations. Landlord, Tenant and any Leasehold Mortgagee shall each have the right to represent its respective interests in any proceeding with respect to a Taking or intended Taking and to make full proof of its claims. No agreement, settlement, sale or transfer to or with the condemning authority shall be made without the consent of Landlord, Tenant and, if required under a Leasehold Mortgage, any applicable Leasehold Mortgagee. Landlord and Tenant each agrees to execute and deliver to the other any instruments which may be required to effectuate or facilitate the provisions of this Lease relating to a Taking.

(e)    Total Taking. If there is a Total Taking, this Lease shall terminate as of the date of the Taking and the Rent theretofore paid or then payable shall be apportioned and paid up to the date of termination, and any unearned Rent shall be refunded to Tenant. The award in respect of a Total Taking shall be apportioned and distributed as follows:

1.    To Tenant, an amount equal to (i) the fair market value of the Improvements and any buildings, structures, fixtures, trade fixtures or personal property of Tenant which are taken, (ii) the fair market value of the leasehold interest hereunder, and (iii) any

33

FILED DATE: 3/10/2025 10:51 AM   20241117604

amounts awarded by the condemning authority for (A) loss of business goodwill, (B) business relocation entitlements and (C) any special damages.

2.     To Landlord, an amount equal to the fair market value of the fee interest in the Premises (as encumbered by this Lease).

Tenant shall direct disbursement of its portion to any Leasehold Mortgagee in accordance with the terms of any Leasehold Mortgage.

(f)     Substantial Taking. If a Substantial Taking shall occur, Tenant may, by notice to Landlord given within one hundred twenty (120) days after Tenant receives the Notice of Intended Taking, elect to treat such Taking as a Total Taking. If Tenant does not so notify Landlord, the Taking shall be deemed a Partial Taking.

(g)     Partial Taking. If a Partial Taking shall occur, this Lease shall remain in effect, without any reduction, abatement or diminution in Rent due hereunder. The Award for a Partial Taking shall be apportioned and distributed in the following order of priority:

1.     To Tenant, the cost of restoring the Improvements and any buildings, structures, fixtures, trade fixtures or other property, together with that portion of the Award allocable to (i) the Improvements and any buildings, structures, fixtures, trade fixtures or personal property subject to the Taking, (ii) loss of business goodwill, and (iii) any special damages specifically awarded to Tenant.

2.     To Landlord, that portion of the Award which is allocated to the value of the fee interest in that portion of the Premises taken (as encumbered by this Lease).

Tenant shall direct that its portion of the Award be disbursed by the Leasehold Mortgagee in accordance with the terms of subsection 17(g) of this Lease; provided that if the cost of such restoration of the Improvements exceeds Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00) then Tenant shall also comply with the terms of subsection 17(b) of this Lease.

(h)     Temporary Taking. In the event of a Temporary Taking of the whole or any part of the Property, the term hereof shall not be reduced or affected in any way, and Tenant shall continue to pay the Rent in full. Tenant shall be entitled to any Award or payment for the temporary use of the Premises and/or Improvements taken; provided that in the event the period of the Temporary Taking extends beyond the expiration of the term of this Lease, Tenant shall only be entitled to that portion of the Award allocable to the period of the Temporary Taking occurring during the Term, determined on a pro rata basis.

25.   **RECORDS**

If reasonably required by Landlord in connection with any sale or financing of the Premises, Tenant shall provide Landlord with copies of all relevant and material notices, financial information (not including tax returns), engineering reports, management reports, operating statements and correspondence in its possession or control which are related to the operation of the Property, including any notices or correspondence received or filed by Tenant

34

from or with any Governmental Authorities, national and local boards of fire underwriters or other bodies exercising similar functions relating to the use or condition of the Property.

## 26.    ESTOPPEL CERTIFICATES.

(a)    Tenant to Execute. Tenant agrees at any time and from time to time, upon not less than ten (10) days prior notice by Landlord, to execute, acknowledge and deliver, without charge, to Landlord, or to any person designated by Landlord, a statement in writing certifying that this Lease is unmodified (or if there have been modifications, identifying the same by the date thereof and specifying the nature thereof), that Tenant has not received any notice of default or notice of termination of this Lease (or if Tenant has received such a notice, that it has been revoked, if such be the case), that to the knowledge of Tenant no Event of Default exists hereunder (or if any such Event of Default does exist, specifying the same and stating that the same has been cured, if such be the case), that Tenant to its knowledge has no claims or offsets against Landlord hereunder (or if Tenant has any such claims, specifying the same), the dates to which the Base Rent and the other sums and charges payable by Tenant hereunder have been paid, and any other similar information reasonably requested by Landlord.

(b)    Landlord to Execute. Landlord agrees at any time and from time to time, upon not less than ten (10) days prior written notice by Tenant, to execute, acknowledge and deliver, without charge, to Tenant or any person designated by Tenant, a statement in writing confirming that this Lease is unmodified (or if there be modifications, identifying the same by the date thereof and specifying the nature thereof), that no notice of default or notice of termination of this Lease has been served on Tenant (or if Landlord has served such notice, that the same has been revoked, if such be the case), that to Landlord's knowledge no Event of Default exists under this Lease (or if any such Event of Default does exist, specifying the same), and the date to which the Base Rent has been paid by Tenant, and any other similar information reasonably requested by Tenant.

## 27.    EVENTS OF DEFAULT.

The following events shall be "Events of Default" as that term is used in this Lease:

(a)    Payment of Rent. If default shall be made in the due and punctual payment of any installment of Rent or other sums or charges payable by Tenant under this Lease or any part thereof when and as the same shall have become due and payable, and such default shall continue for a period of fifteen (15) days after written notice is given to Tenant of such default; or

(b)    Insurance. If default is made in the maintenance and delivery to Landlord of insurance required to be maintained and delivered hereunder within five (5) business days after receipt of Landlord's notice of such default; or

(c)    Assignment and Subletting. If any default shall occur and be continuing under Section 21 hereof within twenty (20) business days after receipt of Landlord's notice of such default; or

(d)    Bankruptcy. If:

35

(i)     Tenant shall file a petition in voluntary bankruptcy under the Bankruptcy Code of the United States or any similar law, state or federal, now or hereafter in effect; or

(ii)    Tenant shall file an answer admitting insolvency or inability to pay its debts; or

(iii)   Within one hundred eighty (180) days after the filing against Tenant of any involuntary proceedings under such Bankruptcy Code or similar law, such proceedings shall not have been vacated or stayed; or

(iv)    Tenant shall be adjudicated a bankrupt, or a trustee or receiver shall be appointed for Tenant or for all or the major part of Tenant's property or the Property or Tenant's interest therein or Tenant's interest in the leasehold estate created hereby in any involuntary proceeding, or any court shall have taken jurisdiction of all or the major part of the Tenant's property or the Property or Tenant's interest therein or Tenant's interest in the leasehold estate created hereby in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of Tenant, and such trustee or receiver shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal or otherwise stayed within sixty (60) days; or

(v)     Tenant shall make an assignment for the benefit of creditors or shall admit in writing its inability to pay its debts generally as they become due or shall consent to the appointment of a receiver or trustee or liquidator of all or the major part of its property, or the Property or Tenant's interest therein or Tenant's interest in the leasehold estate created hereby; or

(e)     Levy. If the leasehold estate of Tenant created hereby or Tenant's interest in the Improvements shall be levied upon under execution and Tenant shall not within thirty (30) days (or within ten (10) days prior to any sale or disposition or forfeiture pursuant to such execution, whichever shall first occur) satisfy or discharge the same or take appropriate action to secure a review thereof, or to appeal therefrom and to secure a stay of execution pending such review or appeal; or

(f)     Other Covenants. If a default shall occur by Tenant in the due and punctual performance or observance of any other agreement or condition herein contained within thirty (30) days following Tenant's receipt of Landlord's notice of default ("Default Notice"); provided that such Default Notice to Tenant is marked in bold lettering with the following: "**FIRST NOTICE: TENANT'S CURE OF THE DEFAULT IDENTIFIED IN THIS NOTICE IS REQUIRED WITHIN THIRTY (30) DAYS OF RECEIPT OF THIS NOTICE PURSUANT TO THE TERMS OF THE GROUND LEASE WITH 820 WEST JACKSON, L.L.C.**" and the envelope containing the request must be marked "**PRIORITY – TENANT'S FAILURE TO CURE THE DEFAULT MAY RESULT IN THE TERMINATION OF THE LEASE**" and if not cured by Tenant within the aforesaid 30-day period, Tenant's receipt of a second (2nd) Default Notice which shall state in bold lettering the following: "**SECOND NOTICE: TENANT'S CURE OF THE DEFAULT IS REQUIRED WITHIN TEN (10)**

36

DAYS OF RECEIPT OF THIS NOTICE PURSUANT TO THE TERMS OF THE GROUND LEASE WITH 820 WEST JACKSON L.L.C." and the envelope containing the request must be marked "PRIORITY – TENANT'S FAILURE TO CURE THE DEFAULT MAY RESULT IN THE TERMINATION OF THE LEASE". Nothing contained in this subsection 27(f) shall prevent Landlord from exercising its right under subsection 22(a)(iii) above to cure any such default.

28.  **RIGHTS OF LANDLORD UPON EVENT OF DEFAULT.**

(a)  Event of Default under Subsection 27(b). In the event of a default under subsection 27(b) above, Landlord's sole remedy shall be to purchase the insurance required to be maintained and delivered by Tenant pursuant to this Lease, in which event Tenant shall as additional Rent reimburse Landlord for the cost of such insurance within ten (10) days after Tenant's receipt of Landlord's demand, which demand shall contain copies of the invoices paid by Landlord with respect to such insurance. In the event Tenant fails to pay Landlord the amount required under the preceding sentence, such default shall be deemed a default under subsection 27(a), entitling Landlord to exercise the remedies provided for in subsection 28(c) below.

(b)  Event of Default under Subsection 27(f). In the event of a default under subsection 27(f) above, except as hereinafter set forth Landlord as its sole remedy, may (but shall not be required) to cure the default under said subsection 27(f), in which event the amount paid by Landlord to cure the default shall be deemed additional Rent due within ten (10) days after Tenant's receipt of Landlord's demand, which demand shall include copies of Landlord's invoices reflecting the amounts paid by Landlord to cure such default. Notwithstanding the foregoing, in the event Landlord reasonably determines that the cost to cure such default shall exceed an amount equal to or greater than $1,000,000.00, shall constitute a potential life safety issue and/or constitute a violation of any applicable municipal ordinances, Landlord shall be entitled to exercise the remedies provided for in subsection 28(c) below.

(c)  Event of Default under Subsections 27(a), (c), (d), (e) and (f). Upon the occurrence of any one or more Events of Default, as specified in subsections 27(a), (c), (d), (e) and (f), it shall be lawful for Landlord to, and Landlord at its election may, (i) terminate the right of Tenant to the possession of the Property without terminating this Lease, or (ii) terminate this Lease, and upon entry of a court order adjudicating the termination of the Lease or the termination of Tenant's right of possession Landlord, in addition to all other remedies herein reserved to it, may forthwith enter upon and reenter the Property and possess and repossess itself thereof, and may dispossess, remove and expel Tenant and all other persons and property from the Property, and in so doing to have, hold and enjoy the Property, as in Landlord's first and former estate, without any such re-entry or repossession working any forfeiture of any Rent or other amounts payable by Tenant hereunder, nor waiving any covenants, agreements or provisions in this Lease contained to be performed by Tenant, or constituting a trespass or forcible entry.

(d)  Right to Relet. At any time or from time to time after repossession of the Property by Landlord pursuant to the terms of this Lease, whether or not the Term of this Lease shall have expired or been terminated, Landlord may relet the Property or any part thereof, in the name of

37

Landlord or otherwise, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term of this Lease) and on such conditions (which may include concessions or free rent) as Landlord, in its absolute discretion, may determine, and may collect and receive the rent therefor. Landlord may, but shall not be required to, make any repairs to the Improvements or make any other changes in the Improvements, or make any other expenditures for the purpose of modifying the Property. Landlord shall in no way be responsible or liable for any failure to relet the Property or any part thereof, or for any failure to collect any rent due upon any such reletting. Tenant shall indemnify Landlord for and save Landlord harmless from any and all losses arising from the termination of Tenant's right of possession and from the re-entry or repossession of the Property in pursuance thereof, and, to that end, Tenant shall pay to Landlord, after such termination of Tenant's right of possession and re-entry or repossession, on the last day of each calendar month of the Term, the difference between the net rent actually received by Landlord from reletting the Property during such month and the Rent and other charges agreed to be paid by Tenant pursuant to the provisions of this Lease during such month, together with the expenses of altering and reletting the Property, commissions and attorneys' fees and expenses.

(e)     No Release of Liability. No expiration or termination of this Lease and no termination by or resulting from summary proceedings or otherwise, shall relieve Tenant of its liability and obligations under this Lease, and any such liability and obligations shall survive any such expiration or termination. In the event of any such expiration or termination, whether or not the Property or any part thereof shall have been relet, Tenant shall pay to Landlord:

(i)     the Rent and other sums and charges to be paid by Tenant up to the time of such expiration or termination of this Lease, plus

(ii)     Landlord's reasonable expenses in connection with such reletting, including, without limitation, all repossession costs, brokerage and management commissions, operating expenses, legal expenses, reasonable attorneys' fees and expenses, alteration costs, and expenses of preparation for such reletting, plus

(iii)     any costs and expenses incurred in collection.

Each of the foregoing amounts shall accrue interest at the Lease Interest Rate until paid. Tenant shall pay all amounts due under this subsection (c) to Landlord on the date of termination of this Lease.

(f)     No Waiver By Landlord. No failure by Landlord to insist upon the strict performance of any covenant, agreement, term or condition of this Lease or to exercise any right or remedy consequent upon a breach thereof, and to acceptance of full or partial rent during the continuance of any breach, shall constitute a waiver of any such breach or such covenant, agreement, term or condition. No covenant, agreement, term or condition of this Lease to be performed or complied with by either party, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by the other party. No waiver of any breach shall affect or alter this Lease, but each and every covenant, agreement, term and condition of

38

this Lease shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

(g)     Tenant Waiver. Tenant hereby expressly waives, so far as permitted by law, the service of any notice of intention to re-enter provided for in any statute. Tenant for and on behalf of itself and all persons claiming through or under Tenant, also waives any and all rights of redemption or re-entry or repossession in case Tenant shall be dispossessed by a judgment or by warrant of any court or judge or in case of re-entry or repossession by Landlord or in case of any expiration or termination of this Lease. The terms "enter," "re-enter," "entry" or "re-entry" as used in this Lease are not restricted to their technical legal meanings.

(h)     Remedies Cumulative. Each right and remedy of Landlord provided for in this Lease shall be cumulative and shall be in addition to every other right or remedy provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Landlord of any one or more of the rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by Landlord of any or all other rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise.

(i)     Application of Funds. If this Lease shall terminate as a result of or while there exists an Event of Default hereunder, any funds then held by Landlord in which Tenant has an interest may be applied by Landlord to any damages payable by or other amounts due from Tenant (whether provided for herein or by law) as a result of such termination or Event of Default, and the balance remaining, if any, shall be paid to Tenant if Tenant would be entitled to receive the same but for such termination or Event of Default.

(j)     Landlord's Option. Landlord may, at its option, exercise any or all of the rights and remedies herein provided without terminating this Lease in the circumstances under which Landlord is entitled to terminate this Lease.

(k)     Waiver of Jury Trial/Counterclaims. Landlord and Tenant hereby waive a jury trial in any action brought by Landlord or Tenant hereunder. If Landlord commences any proceeding for nonpayment of rent or any other sum due to be paid by Tenant under this Lease, Tenant hereby agrees that Tenant will not impose any counterclaim of any nature or description in any such proceeding, provided however, such agreement of Tenant shall not be construed as a waiver of the right of Tenant to assert such claim in a separate action or actions brought by Tenant.

(l)     No Accord and Satisfaction. No payment by Tenant or receipt by Landlord of a lesser amount that the monthly rent herein stipulated and other charges shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Lease provided.

39

FILED DATE: 3/10/2025 10:51 AM   20241117604

29.   **INVALIDITY OF PARTICULAR PROVISIONS.**

If any term or provision of this Lease or application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

30.   **NOTICES.**

All notices, requests, demands, consents, approvals, and other communications which may or are required to be served or given hereunder (collectively called "Notices") shall be in writing and shall be personally delivered, sent by facsimile transmission, or sent by registered or certified mail, return receipt requested with postage prepaid, or by a recognized national overnight delivery service, addressed to the party to receive such notice at the following addresses:

| | |
|---|---|
| If to Tenant: | V820 Jackson, LLC<br>c/o Crayton Advisors, LLC<br>833 West Jackson Boulevard, Suite 610<br>Chicago, Illinois 60607<br>Attn: John Abell |
| with a copy to: | Seyfarth Shaw LLP<br>131 S. Dearborn Street, Suite 2400<br>Chicago, Illinois 60603-5577<br>Attn: Ira Fierstein |
| If to Landlord: | 820 West Jackson L.L.C.<br>c/o Marc Realty<br>55 East Jackson, Suite 500<br>Chicago, Illinois 60604<br>Attn: Laurence H. Weiner |
| with a copy to: | Much Shelist, P.C.<br>191 North Wacker Drive, Suite 1800<br>Chicago, Illinois 60606<br>Attn: Arnold Weinberg |

Either party may, by notice given as aforesaid, change its address for all subsequent notices, except that neither party may require Notices to it to be sent to more than two addresses. Except where otherwise expressly provided to the contrary elsewhere in this Lease, Notices shall be deemed given when received by the addressee in the manner aforesaid, or delivered to the addressee, or delivered to the overnight delivery service as aforesaid, or if sent by facsimile transmission, upon receipt, with proof of transmission.

31.  CONDITION OF AND TITLE TO PROPERTY.

Tenant represents that the Premises, the title thereto, the sidewalks and structures adjoining the same, and any subsurface conditions thereof, and the present uses and nonuses thereof, have been examined by Tenant, and Tenant agrees that it will accept the same in the condition or state in which they or any of them now are, without representation or warranty, express or implied in fact or by law, by Landlord, and without recourse to Landlord as to the title thereto, the nature, condition or usability thereof, or the use or uses to which the Premises or any part thereof may be put.

32.  QUIET ENJOYMENT; TITLE POLICY.

Landlord covenants that as long as Tenant shall pay the Rent and all other sums and charges herein provided, and shall observe and keep all covenants, agreements and conditions of this Lease on its part to be observed and kept, Tenant shall quietly have and enjoy the Premises during the Term of this Lease, without hindrance or molestation by anyone, subject, however, to the exceptions, reservations, and conditions of this Lease. Upon execution of this Lease, Landlord shall be obligated to deliver to Tenant a Leasehold Title Insurance Policy from First American Title Insurance Company in the amount of Six Million Three Hundred Thousand Dollars ($6,300,000.00).

33.  LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS.

(a)  Landlord Not Obligated. If Tenant shall at any time fail to pay any Additional Rent in accordance with the provisions hereof, or take out, pay for, maintain or deliver any of the insurance policies provided for herein, or fail to make any other payment or perform any other act on its part to be made or performed, then Landlord, after expiration of the applicable grace period, if any, except when other notice is expressly provided for in this Lease (or without notice in case of an emergency), and without waiving or releasing Tenant from any obligation of Tenant contained in this Lease, may (but shall be under no obligation to):

(i)  Pay any Imposition payable by Tenant pursuant to the provisions hereof; or

(ii)  Take out, pay for and maintain any of the insurance policies provided for herein; or

(iii)  make any other payments or perform any act on Tenant's part to be made or performed as in this Lease provided, and may enter upon the Property for any such purpose, and take all such action thereon as may be necessary therefor.

(b)  Sums Advanced by Landlord. All sums so paid by Landlord and all costs and expenses incurred by Landlord in connection with the performance of any such act, together with interest thereon at the Lease Interest Rate from the respective dates of Landlord's making of each such payment or incurring of each such cost and expense, shall be paid by Tenant to Landlord on demand as Additional Rent hereunder, and Landlord shall not be limited in the proof of any damages which Landlord may claim against Tenant arising out of or by reason of Tenant's failure

41

to provide and keep in force insurance as aforesaid to the amount of the insurance premium or premiums not paid or incurred by Tenant and which would have been payable upon such insurance, but Landlord shall also be entitled to recover as damages for such breach the uninsured amount of any loss, to the extent of, any deficiency in the minimum amount of insurance required by the provisions of this Lease, and damages, costs and expenses of suit suffered or incurred by reason of damage to, or destruction of, any Improvement on the Premises occurring during any period when Tenant shall have failed or neglected to provide insurance as aforesaid. Payments by Landlord under this Section shall constitute a cure of an Event of Default only at the option of Landlord.

34.   **MISCELLANEOUS**.

(a)   Conditions and Covenants. All of the provisions of this Lease shall be deemed and construed to be "conditions" and "covenants" as though the words specifically expressing or importing covenants and conditions were used in each separate provision hereof.

(b)   Termination. Any reference herein to the termination of this Lease shall be deemed to include any termination hereof by expiration, or pursuant to Sections 24 or 27 hereof, or otherwise.

(c)   Headings and Captions. The captions and table of contents, if any, in this Lease are inserted only as a matter of convenience and for reference and in no way define, limit, enlarge or describe the scope or intent of this Lease nor in any way shall affect this Lease or the construction of any provision hereof.

(d)   Entire Agreement. This Lease constitutes the entire agreement between Landlord and Tenant relative to the Premises and supersedes any prior agreements, brochures or representations, whether written or oral. This Lease may be altered, amended or revoked only by an instrument in writing signed by both Landlord and Tenant. This Lease shall not be effective or binding on any party until fully executed by both parties hereto.

(e)   Brokerage. Tenant warrants that it has no dealings with any real estate broker or agent in connection with this Lease and Tenant covenants to pay, hold harmless and indemnify Landlord from and against any and all cost, expense or liability for any compensation, commissions and charges claimed by any other broker or other agent with respect to this Lease or the negotiation thereof arising out of any acts of Tenant. Landlord warrants that it has no dealings with any real estate broker or agent in connection with this Lease and Landlord covenants to pay, hold harmless and indemnify Tenant from and against any and all cost, expense or liability for any compensation, commissions and charges claimed by any other broker or other agent with respect to this Lease or the negotiation thereof arising out of any acts of Landlord. Notwithstanding the above, Landlord agrees to pay any commission, if any, due the broker receiving a commission under the Purchase Agreement.

(f)   Binding Effect. The covenants, conditions and agreements in this Lease shall bind and inure to the benefit of Landlord and Tenant and, except as otherwise provided in this Lease, their respective successors and assigns.

42

(g)    Time Is Of The Essence.  Time is of the essence of this Lease and all provisions herein relating thereto shall be strictly construed.

(h)    Construction.  This Lease shall be construed and enforced in accordance with the laws of the State of Illinois.

(i)    No Relationship Other Than Landlord/Tenant.  Nothing contained herein shall be deemed or construed by the parties hereto, nor by any third party, as creating the relationship of principal and agent or of partnership, or of joint venture by the parties hereto, or of borrower and lender, it being understood and agreed that no provision contained in this Lease nor any acts of the parties hereto shall be deemed to create any relationship other than the relationship of landlord and tenant.

(j)    Time.  Time is of the essence of this Lease and each and every provision hereof.

(k)    No Waiver.  Landlord's granting of any consent under this Lease, or Landlord's failure to object to any action taken by Tenant without Landlord's consent required under this Lease, shall not be deemed a waiver by Landlord of its rights to require such consent for any further similar act by Tenant.  No waiver by Landlord of any other breach of the covenants of this Lease shall be construed, taken or held to be a waiver of any other breach or to be a waiver, acquiescence in or consent to any further or succeeding breach of the same covenant.  None of the Tenant's covenants under this Lease, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Landlord.

## 35.    INTERRUPTION OF SERVICE.

Landlord does not covenant, represent or warrant that any utilities or services (including, without limitation, gas, storm sewer, sanitary sewer, water, telephone and electricity) will be free from interruptions caused by repairs, renewals, improvements, changes of services, alterations, strikes, lockouts, labor controversies, acts of God, accidents or defaults of Tenant or other parties, unauthorized acts or defaults of janitors or employees of Tenant, or any cause or causes, similar or dissimilar.  Any such interruption shall never be deemed an actual or constructive eviction or disturbance of Tenant's use and possession of the Property or any part thereof, or render Landlord liable to Tenant for damages, or relieve Tenant from full and prompt performance of Tenant's obligations under this Lease.

## 36.    MEMORANDUM OF LEASE.

~~Concurrently with the execution of this Lease, the parties shall execute a Memorandum of~~ Lease (herein called the "**Memorandum**"), in the form attached hereto as **Exhibit B**.  Landlord shall record such Memorandum in such place or places in the County where the Premises is located as are provided for the recording of deeds; provided, however, that such recording shall be at the sole of cost of Tenant.  The original recorded Memorandum shall be delivered to Tenant.  Landlord shall be responsible for the transfer tax imposed on Tenant by the applicable City of Chicago Ordinance, commonly referred to as the "**City**" portion and Tenant shall be responsible for the portion of the City of Chicago transfer tax commonly referred to as the

43

"CTA" portion, to the extent that any such transfer tax is payable with respect to this Lease and/or the recording of the Memorandum.  Landlord shall also be responsible for the cost of recording the Memorandum.

37.   **FORCE MAJEURE.**

If either party shall be delayed, hindered or prevented from performing any act required by reason of strike, lockout, inability to procure materials, failure of power, restrictive Laws, riot, insurrection, war, terrorism or any other reason of a like nature not the fault of the party delayed in performing the act, the performance of the act shall be excused for the period of the delay and the period allowed for the performance of the act shall be extended for a period equivalent to the period of the delay; provided, however, that this Section 37 shall not effect Tenant's obligation to pay Rent or either party's obligations to pay any other sums of money due hereunder.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

44

FILED DATE: 3/10/2025 10:51 AM  20241117604

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Ground Lease as of the day and year first above written.

**LANDLORD:**

**820 WEST JACKSON L.L.C.,**
an Illinois limited liability company

By: _____
Name: LAURENCE H. WEINER
Its: MANAGER

**TENANT:**

**V820JACKSON, LLC,**
an Illinois limited liability company

By: _____
Name: Andrew P. Vaccaro
Its:   Manager

[Signature Page to Ground Lease]

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Ground Lease as of the day and year first above written.

**LANDLORD:**

**820 WEST JACKSON L.L.C.,**
an Illinois limited liability company

By: _____

Name: _____

Its: _____

**TENANT:**

**V820JACKSON, LLC,**
an Illinois limited liability company

By: _____

Name: Andrew P. Vaccaro

Its: Manager

[Signature Page to Ground Lease]

FILED DATE: 3/10/2025 10:51 AM   20241117604

## EXHIBIT A
## LEGAL DESCRIPTION

Parcel 1:

Lots 9, 10, 11 and 12 in Block 11 in Duncan's Addition to Chicago in the East 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the third Principal Meridian, in Cook County, Illinois.

Parcel 2:

The West 36 feet of Lot 6 in Block 11 in Duncan's Addition to Chicago in the East 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the third Principal Meridian, in Cook County, Illinois.

Parcel 3:

That part of Lot 13 in Block 11 in Duncan's Addition to Chicago in the East 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the third Principal Meridian, described as follows:

Beginning at the South East corner of said Lot 13; thence North on the East line of said Lot 13, 40 feet; thence West parallel to the South line of said Lot 13, 20 feet; thence Southwesterly on a straight line to a point which is 27 feet West of the East line of said Lot 13 and is 10 feet North of the South line of said Lot 13; thence West parallel to the South line of said Lot 13 to the West line of said Lot 13; thence South on the West line of said Lot 13, 10 feet to the South West corner of said Lot 13; thence East on the South line of said Lot 13 to the place of beginning in Cook County, Illinois.

Parcel 4:

Lot 6 (except the West 36 feet thereof) in Block 11 in Duncan's Addition to Chicago in the East 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the third Principal Meridian, in Cook County, Illinois.

FILED DATE: 3/10/2025 10:51 AM   20241117604

## EXHIBIT B
## MEMORANDUM OF LEASE

See Attached

47

FILED DATE: 3/10/2025 10:51 AM   20241117604

THIS INSTRUMENT
PREPARED BY
AND AFTER RECORDING
RETURN TO:
Arnold Weinberg
Much Shelist, P.C.
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60606

*This space reserved for Recorder's use only.*

## MEMORANDUM OF GROUND LEASE

THIS MEMORANDUM OF GROUND LEASE is made as of the ____ day of October, 2015, by and between 820 WEST JACKSON L.L.C., an Illinois limited liability company ("Landlord"), and V820JACKSON, LLC, an Illinois limited liability company ("Tenant").

Pursuant to a Ground Lease dated October ___, 2015 by and between Landlord and Tenant, (the "Ground Lease"), and incorporated herein by this reference, Landlord has leased to Tenant, commencing on the date hereof ("Commencement Date") and ending on the last day of the ninety-ninth (99th) consecutive Lease Year, the parcel of land (but not the Improvements) located in Chicago, State of Illinois, which parcel of land is legally described on **Exhibit A** attached hereto and made a part hereof.

All capitalized terms not defined in this Memorandum of Ground Lease shall have the meanings given to them in the Ground Lease. To the extent of any conflict between this Memorandum of Ground Lease and the terms of the Ground Lease, the Ground Lease shall control.

It is understood that the purpose of this instrument is to create of record a leasehold estate, the terms and conditions of which, other than as the same are set forth herein, are contained in the Ground Lease referred to above, which Ground Lease and any and all amendments thereto are, by this reference, made a part hereof the same as if fully rewritten herein.

This Memorandum of Ground Lease may be executed in counterparts, all of which evidence only one agreement and only one of which need be produced for any purpose, which, when assembled and taken together, is to be regarded as a single agreement.

48

FILED DATE: 3/10/2025 10:51 AM 20241117604

IN WITNESS WHEREOF, this Memorandum of Ground Lease has been executed as of the day and year first above written.

LANDLORD:

**820 WEST JACKSON L.L.C.**, an Illinois limited liability company

By:_____
Name: LAURENCE H. WEINER
Its: MANAGER

TENANT:

**V820JACKSON, LLC**, an Illinois limited liability company

By:_____
Name:_____
Its:_____

49

FILED DATE: 3/10/2025 10:51 AM   20241117604

STATE OF ILLINOIS          )
                           ) ss.
COUNTY OF COOK             )

I, _____NATALIA  M   ZIEBA_____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that _LAURENCE  H.  WEINER_, as _MANAGER_ of _820 WEST JACKSON  LLC_, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _MANAGER_ of said limited liability company, appeared before me this day in person and acknowledged that he/she signed and delivered the said instrument as his/her own free and voluntary act and as the free and voluntary act of said limited liability company for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this _15_ day of _OCTOBER_, 2015.

_____
Notary Public

> OFFICIAL SEAL
> NATALIA M. ZIEBA
> NOTARY PUBLIC, STATE OF ILLINOIS
> My Commission Expires 08/12/2019

STATE OF ILLINOIS          )
                           ) ss.
COUNTY OF COOK             )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that _____, as _____ of _____, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____ of said limited liability company, appeared before me this day in person and acknowledged that he/she signed and delivered the said instrument as his/her own free and voluntary act and as the free and voluntary act of said limited liability company for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this _____ day of _____, 2015.

_____
Notary Public

FILED DATE: 3/10/2025 10:51 AM   20241117604

## EXHIBIT A

### LEGAL DESCRIPTION OF LEASED PARCEL

Parcel 1:

Lots 9, 10, 11 and 12 in Block 11 in Duncan's Addition to Chicago in the East 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the third Principal Meridian, in Cook County, Illinois.

Parcel 2:

The West 36 feet of Lot 6 in Block 11 in Duncan's Addition to Chicago in the East 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the third Principal Meridian, in Cook County, Illinois.

Parcel 3:

That part of Lot 13 in Block 11 in Duncan's Addition to Chicago in the East 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the third Principal Meridian, described as follows:

Beginning at the South East corner of said Lot 13; thence North on the East line of said Lot 13, 40 feet; thence West parallel to the South line of said Lot 13, 20 feet; thence Southwesterly on a straight line to a point which is 27 feet West of the East line of said Lot 13 and is 10 feet North of the South line of said Lot 13; thence West parallel to the South line of said Lot 13 to the West line of said Lot 13; thence South on the West line of said Lot 13, 10 feet to the South West corner of said Lot 13; thence East on the South line of said Lot 13 to the place of beginning in Cook County, Illinois.

Parcel 4:

Lot 6 (except the West 36 feet thereof) in Block 11 in Duncan's Addition to Chicago in the East 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the third Principal Meridian, in Cook County, Illinois.